ATTORNEY FOR APPELLANT
George A. Leininger
Madison, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Kelly A. Miklos
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 15S01-0609-CR-333

CARLOS M. JACKSON,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Dearborn Circuit Court, No. 15D01-0108-CF-26
The Honorable G. Michael Witte, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 15A01-0505-CR-205

**June 26, 2007**

**Boehm, Justice.**

We hold that a trial court may find a knowing and voluntary waiver of a defendant's right to be present at his jury trial if (1) the defendant knew his trial date and (2) the defendant did not provide an adequate explanation for his absence from trial. We also hold that a trial court is not required to readvise a defendant of his right to counsel or the perils of self-representation when the trial court revokes a defendant's attorney's pro hac vice status if (1) the defendant was advised of his right to have appointed counsel at his initial hearing and (2) the defendant had initially retained counsel and had made no indication to the trial court that he could not afford to

hire another attorney or intended to proceed pro se. Finally, under these circumstances, a defendant's intentional and inexcusable absence from trial can serve as a knowing, voluntary, and intelligent waiver of the right to counsel.

**Facts and Procedural History**

Carlos Jackson was found guilty of possession of cocaine with intent to deliver as a class A felony and possession of a handgun without a license as a class C felony. Jackson raises two issues on appeal: (1) the trial court committed reversible error when it conducted a jury trial attended by neither Jackson nor any attorney representing him and (2) the trial court committed reversible error when it did not question Jackson about his ability to hire counsel and did not inform Jackson that he had a right to a court-appointed attorney if he could not afford one. The Court of Appeals found the first of these issues dispositive, concluding that there was "simply no evidence that Jackson knowingly, voluntarily, and intelligently waived his right to counsel." Jackson v. State, No. 15A01-0505-CR-205, slip op. at 6 (Ind. Ct. App. Feb. 15, 2006).

On August 31, 2001, the State charged Jackson with several crimes. On September 4, 2001, Jackson was present at the initial hearing where the trial court advised Jackson of his rights. On November 28, 2001, Robert Carpenter, an attorney admitted in Indiana, filed Jackson's motions to suppress and for bill of particulars and a demand for discovery. On December 5, 2001, Clyde Bennett II, who is not admitted in this state, was admitted as Jackson's counsel pro hac vice. Jackson and Bennett were present for pretrial conferences on December 21, 2001 and March 20, 2002. A jury trial was scheduled for June 24, 2002. On May 28, 2002, Jackson appeared for a pretrial conference without an attorney. On June 5, 2002, Bennett successfully moved to continue the jury trial. The trial was reset for October 21, 2002 with a pretrial conference scheduled for September 23, 2002. On July 15, 2002, the trial court rescheduled the final pretrial conference for October 1, 2002.

On October 1, 2002, Jackson appeared at the pretrial conference without an attorney. The State reported that there had been no depositions and the defense had not provided it with a witness or exhibit list. The trial court revoked Bennett's pro hac vice status and scheduled an additional pretrial hearing for October 15, 2002. Jackson was ordered to appear with an attorney licensed in Indiana. Carpenter remained Jackson's attorney of record. The trial court told Jack-

son that the October 21 trial date would remain the same but that the new attorney could file a motion to continue. Jackson was handed a copy of the court's order. On October 3, 2002, the trial court sent an order with the same information to all parties and attorneys, revoking Bennett's pro hac vice status, setting a status conference for October 15, 2002, and ordering Carpenter to appear at the hearing and be prepared for the jury trial scheduled for October 21, 2002.

On October 15, 2002, Carpenter and Jackson appeared before the trial court and notified the court that Jackson intended to retain new counsel and discharge Carpenter and Bennett. They stated that Jackson had been unsuccessful in contacting new counsel and needed additional time. The trial court granted Jackson's request for additional time and rescheduled the jury trial for January 27, 2003 with two pretrial hearings on November 21, 2002 and December 26, 2002. Jackson was ordered to hire counsel by the November 21 pretrial conference. Neither Jackson, Carpenter, nor anyone else suggested that Jackson might proceed pro se. The trial court entered a written order setting the dates of the new pretrial hearings and the jury trial, granting Jackson's request for additional time, noting that Jackson discharged his attorneys, and directing Jackson to retain substitute counsel by the next hearing. This order was handed to Jackson at the hearing.

On November 21, 2002 and December 26, 2002, neither Jackson nor any defense attorney appeared for the pretrial conferences, and a bench warrant was issued for Jackson's arrest. On January 27, 2003, neither Jackson nor any defense attorney appeared for the scheduled jury trial, and the State moved to proceed with the trial in absentia. The trial court found that on October 15, 2002, Jackson had been notified of the trial date both orally and in writing by the trial court. The trial court held that Jackson's failure to appear was willful, voluntary, and knowing. Jackson was then tried and convicted in absentia after the two-day trial.

On December 10, 2003, Attorney John Dornette filed an appearance on behalf of Jackson, a praecipe for transcript of hearing, and a motion to correct error. Jackson claimed, in an attached affidavit, that: (1) Jackson requested that Bennett refund his fee, but Bennett did not do so; (2) Jackson was unable to hire counsel; (3) Jackson "did not know to attend trial" because he did not have a lawyer and his "old lawyers led him to believe there was no trial"; and (4) that "throughout this time" Jackson continued to be represented by Bennett in another matter pending in Ohio. The trial court conducted a hearing on the motion to correct error on April 6, 2004 and

3

subsequently denied the motion. The Court of Appeals reversed and remanded for a new trial, and we granted transfer. Jackson v. State, 860 N.E.2d 591 (Ind. 2006).

**Jackson's Constitutional Rights**

Of course, the constitutional rights of Jackson and every other accused must be strictly enforced. But a defendant cannot be permitted to manipulate the system simply by refusing to show up for trial. Jackson has not established on this record that any of his constitutional rights have been violated. To the contrary, we conclude that this record fully supports the trial court's finding that Jackson willfully and knowingly refused to appear at trial and waived his right to counsel and his right to be present at trial. We also conclude that, under these circumstances, the trial court did not have a duty to readvise Jackson of the right to counsel or the perils of self-representation when it revoked Jackson's attorney's pro hac vice status because there was no indication that Jackson intended to proceed pro se or could not hire another attorney.

A. *Right To Be Present at Trial*

First, it is clear that Jackson waived his right to be present at his trial. Both the Federal and Indiana Constitutions afford defendants in a criminal proceeding the right to be present at all stages of their trial. U.S. Const. amend. VI; Ind. Const. art. 1, § 13. However, a defendant may be tried in absentia if the trial court determines that the defendant knowingly and voluntarily waived that right. Lampkins v. State, 682 N.E.2d 1268, 1273 (Ind. 1997) (citing Freeman v. State, 541 N.E.2d 533, 535 (Ind. 1989); Fennell v. State, 492 N.E.2d 297, 299 (Ind. 1986)).

> When a defendant fails to appear for trial and fails to notify the trial court or provide it with an explanation of his absence, the trial court may conclude the defendant's absence is knowing and voluntary and proceed with trial when there is evidence that the defendant knew of his scheduled trial date.

Freeman, 541 N.E.2d at 535 (citing Carter v. State, 501 N.E.2d 439, 440-41 (Ind. 1986); Martin v. State, 457 N.E.2d 1085, 1086 (Ind. 1984)); see also Lampkins, 682 N.E.2d at 1273 ("The best evidence that a defendant knowingly and voluntarily waived his or her right to be present at trial is the defendant's presence in court on the date the matter is set for trial." (internal quotations

4

and citations omitted)).[1] The record shows that Jackson was informed of his trial date at the pre-trial conference, both orally and in writing. Jackson never contacted the court prior to his trial to address any confusion he might have had about the trial date or indicate to the trial court that he was unable to hire trial counsel.

It is not clear what Jackson's affidavit means when he says he was "led to believe" his trial would not go forward. According to Jackson's affidavit, Jackson "relying upon counsel, was led to believe that the January 27, 2003 trial date would be cancelled [and] that a new date would be set after an attorney appeared." This is subject to several interpretations. Jackson could have honestly believed from his attorney's advice that he did not have to attend trial on January 27. At the other end of the spectrum, Jackson may have been informed by his attorney that Jackson could manipulate the system by missing his trial. Taken most generously to him, his affidavit claims that his attorney informed him that he did not have to attend trial on January 27. If that was the case, that fact may support an ineffective assistance of counsel claim, but the facts necessary to support such a claim are not established on this record and are left to post-conviction procedures if Jackson believes he can establish such a claim.[2] Even if Jackson's absence was in reliance on counsel's advice, it does not negate Jackson's waiver of his right to be present at his jury trial. Consistent with Indiana law, the trial court properly concluded that Jackson's knowledge of the trial date coupled with a lack of explanation for his absence supported a determination that there was a voluntary and knowing waiver.

B. *Right to Counsel and the Trial Court's Duty to Advise*

Second, Jackson waived his right to be represented by counsel, and the trial court had no duty to readvise Jackson on the right to counsel or admonish him on the perils of self-representation when it revoked Jackson's attorney's pro hac vice status. The right to be repre-

---

[1] We recognize that federal law does not permit a defendant to be tried in absentia in federal court if the defendant was not present at the beginning of the trial. Fed. R. Crim. P. 43, see also Crosby v. United States, 506 U.S. 255, 262 (1993). The Supreme Court has not ruled that trying a defendant in absentia if the defendant was not present at the beginning of the trial violates the Federal Constitution. Crosby, 506 U.S. at 262. Accordingly, we resolve this case under Indiana state law.

[2] Jackson's own self-serving affidavit in support of his motion to correct error is the only evidence relating to his claim of ineffective assistance of counsel. There is no live testimony from anyone on this issue and nothing in the record from his former attorneys supporting Jackson's assertions or clarifying precisely what advice Jackson received from his counsel. The trial court could have properly concluded that Jackson failed to establish reasonable reliance on counsel's advice.

sented by counsel is also protected by both the Federal and Indiana Constitutions. U.S. Const. amend. VI; Ind. Const. art. 1, § 13. The right to counsel can be waived only by a knowing, voluntary, and intelligent waiver. Jones v. State, 783 N.E.2d 1132, 1138 n.2 (2003). We recognize that a defendant's absence from trial does not constitute a waiver of the right to counsel in every case. We conclude that in this case, however, the record supports the trial court's specific finding that Jackson's absence from trial was a "willful, knowing and voluntary act." The record in Jackson's case establishes that he repeatedly disregarded scheduled events. His last pretrial appearance in court ended with his counsel of record being discharged and an order setting a third and final trial date and directing Jackson to retain new counsel as he had said he would. He then failed to appear, failed to notify the court of his inability to retain counsel, and failed to request a continuance. We hold that this unexplained disregard of specific directions by the court and his own undertakings was sufficient to establish an intentional and inexcusable absence from trial and serves as a knowing, intelligent, and voluntary waiver of counsel.

Furthermore, the trial court had no duty to readvise Jackson on the right to counsel or admonish Jackson of the perils of self-representation when there was no indication that Jackson intended to proceed pro se or lacked funds to retain counsel. There is no doubt that the right to be represented by counsel includes the right of an indigent defendant in a criminal prosecution to have counsel provided for him at state expense. See, e.g., Gideon v. Wainwright, 372 U.S. 335, 344-45 (1963); Pallett v. State, 269 Ind. 396, 401, 381 N.E.2d 452, 456 (1978). Jackson contends the trial court had a duty to inform Jackson that he had a right to court-appointed counsel at the time the court revoked Jackson's attorney's pro hac vice status. We disagree. Jackson was advised of his right to have appointed counsel at his initial hearing as reflected by the chronological case summary note of a "full advise." Jackson makes no claim on appeal that he was not advised of this right at that time. At no time did Jackson request pauper counsel or indicate to the trial court that he could not afford an attorney. To the contrary, he represented that he would retain his own lawyer. In fact, Jackson had appeared with two retained counsel from a prominent Cincinnati law firm.[3] Jackson also posted a $100,000 surety bond in the present case, apparently satisfying his bonding company that he was a reasonable financial risk. Jackson had ample op-

---

[3] According to Martindale-Hubbell, Dinsmore & Shohl is a major Cincinnati firm with a wide range of practice areas and a client list including some of the nation's largest enterprises. Martindale-Hubbell Home Page, http://www.martindale.com (search Dinsmore, Cincinnati, Ohio).

portunity—including the two pretrial conferences that he chose not to attend—to inform the court that he could no longer afford an attorney if that were the case. Under these circumstances it was reasonable for the trial court to conclude that Jackson intended to and would hire a new attorney. Indeed, Jackson offers no authority to support his claim that the trial court was required to readvise him of his rights to appointed counsel at the time it revoked his attorney's pro hac vice status.

In addition, warnings as to the perils of self-representation are irrelevant to Jackson's case. Jackson did not represent himself; he absented himself. The problem is not self-representation but self-help by boycotting the trial altogether. The trial court would have had a duty to advise Jackson of his right to counsel and the perils of self-representation if there was some indication that Jackson intended to proceed pro se. See Poynter v. State, 749 N.E.2d 1122 (Ind. 2001). But that prospect was never raised by Jackson or his attorneys. At Jackson's last appearance in court, Carpenter remained Jackson's attorney of record, and Jackson had expressly informed the court that he had called other attorneys and was awaiting their return calls to replace Carpenter. Poynter is significantly different from Jackson's case in several respects. First, in Poynter the trial court was told of the possibility that the defendant would proceed pro se. At a pretrial conference, the trial court and defendant engaged in a dialogue that clearly indicated that the defendant may not hire a lawyer for trial. Id. at 1125. In this case, however, there was no suggestion that Jackson would proceed pro se or that there was any financial bar to his obtaining new representation. Second, Poynter did in fact represent himself at trial without having been warned of the dangers of self-representation. Third, in Poynter, the trial court made no finding regarding the fact that the defendant appeared for trial without counsel. Id. ("Neither the trial judge nor the parties commented regarding the absence of an attorney for the defendant."). The trial judge in the present case, however, made a specific finding that Jackson's absence was a "willful, knowing and voluntary act" after reviewing Jackson's consistent failures to follow the trial court's directions or appear for scheduled events.

The dissent points to cases finding that the right to counsel was waived knowingly and intelligently through a defendant's conduct and notes that all of these cases involved admonitions to the defendants about the perils of self-representation. These cases, however, all involved (1) indications to the trial court that the defendant may proceed pro se and (2) a defendant who actu-

7

ally showed up at some stage of trial without a lawyer and proceeded pro se. Again, in this case, there was no signal to the trial court that Jackson might proceed pro se. Nor was there an opportunity before trial to warn Jackson of the perils of self-representation because Jackson never appeared without counsel or signaled that he might. A defendant cannot manipulate a trial court to thinking that he or she will hire an attorney, fail to show up at trial or send an attorney, and then assert that the right to counsel was not waived because the trial court did not admonish the defendant about proceeding pro se.

The dissent finally notes cases from the Indiana Court of Appeals and other jurisdictions that held that a defendant's failure to appear at trial does not waive the right to counsel. We do not find that these cases suggest that Jackson's behavior was insufficient to establish a waiver of the right to counsel. Cases from the same jurisdiction suggest a failure to appear can waive the right to counsel, even if there was no such admonition. See State v. Cain, 284 S.E.2d 779 (S.C. 1981) (involving a defendant who was tried in absentia and not given admonitions about proceeding without counsel and finding that "a waiver of the right to counsel can be inferred from a defendant's actions"); State v. Gill, 584 S.E.2d 432, 437-438 (S.C. Ct. App. 2003). These cases finding a need for an admonition involved either (1) a sparse record that did not indicate that the defendant willfully disregarded the trial court's orders; (2) indications that the defendant may try to represent himself; or (3) an unreasonably short amount of time between the withdrawal of the defendant's attorney and trial. None of the cases involved a defendant who had appeared with a lawyer but then disappeared for trial, a clear finding by the trial court that the defendant willfully and voluntarily missed his own trial, and no suggestion that the defendant would not hire his own attorney.

We recognize that "waiver by conduct" cases usually require that the defendant be warned of the dangers of self-representation before a knowing and intelligent waiver of the right to counsel can be found. See, e.g., Bultron v. State, 897 A.2d 758, 765 (Del. 2006); State v. Hampton, 92 P.3d 871, 874 (Ariz. 2004). However, a common theme among these "waiver of conduct" cases is some indication from the defendant or counsel that a defendant may proceed pro se. In addition to a direct statement that the defendant wishes to represent himself, the need for admonishment can be established by a defendant's showing up for trial without counsel, counsel's withdrawing before trial, or the defendant's indigency. But none of these occurred in

8

Jackson's case. We cannot expect a trial court to hunt down a defendant to admonish him about the dangers and disadvantages of self-representation if the defendant has made no indication to the trial court that he intends to proceed pro se and then subsequently does not show up for trial.

## Conclusion

We affirm the trial court's denial of Jackson's motion to correct error.

Shepard, C.J., and Dickson, J., concur.

Rucker, J., dissents with separate opinion in which Sullivan, J., concurs

**Rucker, J., dissenting.**

Because the defendant in this case did not knowingly and intelligently waive his right to counsel, I respectfully dissent.

It is well-settled that the Sixth and Fourteenth Amendments of our federal Constitution provide criminal defendants in state courts the fundamental right to be represented by counsel at trial. Gideon v. Wainwright, 372 U.S. 335, 342-43 (1963). This right is not absolute; it may be waived by the defendant. Johnson v. Zerbst, 304 U.S. 458, 465 (1938). Waiver may be communicated verbally or through the defendant's conduct, see Poynter v. State, 749 N.E.2d 1122, 1126 (Ind. 2001), and it must be voluntary, knowing, and intelligent. Iowa v. Tovar, 541 U.S. 77, 88 (2004); Poynter, 749 N.E.2d at 1126, 1128-29.

However, before a trial court may find that a defendant has waived this right, the court has a positive duty to advise the defendant of the dangers of proceeding without counsel. Tovar, 541 U.S. at 88-89; Faretta v. California, 422 U.S. 806, 835 (1975) (citing Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)) (The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"); Poynter, 749 N.E.2d at 1126. This advisement enables the defendant to make a knowing and intelligent waiver. See Faretta, 422 U.S. at 835 (citation omitted) ("[T]he accused must knowingly and intelligently forgo" the "traditional benefits associated with the right to counsel."). Because of the paramount importance of the right to counsel in criminal proceedings, courts will indulge every reasonable presumption against waiver. Johnson, 304 U.S. at 464; United States v. Best, 426 F.3d 937, 942 (7th Cir. 2005); Poynter, 749 N.E.2d at 1126. We *cannot* presume waiver from a silent record. Burgett v. Texas, 389 U.S. 109, 114-15 (1967); Cuppett v. Duckworth, 8 F.3d 1132, 1138 (7th Cir. 1993); Hatcher v. State, 414 N.E.2d 561, 565 (Ind. 1981).

In this case, assuming that Jackson *voluntarily* neglected to hire an attorney to represent him at trial after the removal of his two initial attorneys,[1] there is simply no indication in the record that such behavior represented a *knowing and intelligent* waiver of his right to representation of counsel. Instructive here is Poynter, an opinion handed down by this Court in 2001. In Poynter, the Court examined whether a defendant waived his right to representation by counsel through his conduct. The defendant informed the court that he planned to hire private counsel but subsequently appeared on the day of trial without an attorney. The State's position was that "the trial court had no duty to advise the defendant of the disadvantages of appearing without counsel, because defendants who tell the court they are hiring counsel do not need such warnings." Poynter, 749 N.E.2d at 1124. In rejecting this contention, we noted that in waiver-by-conduct cases where the waiver is deemed knowing and intelligent the finding "invariably included evidence of an admonition to the defendant on the dangers and disadvantages of self-representation." Id. at 1126 (citing United States v. Hoskins, 243 F.3d 407, 411 (7th Cir. 2001); United States v. Irorere, 228 F.3d 816, 828 (7th Cir. 2000); United States v. Kneeland, 148 F.3d 6, 11 (1st Cir. 1998); United States v. Bauer, 956 F.2d 693, 695 (7th Cir. 1992); United States v. Weninger, 624 F.2d 163, 167 (10th Cir. 1980)).

Advancing various reasons in support, the majority insists "the trial court had no duty to readvise Jackson on the right to counsel or admonish Jackson of the perils of self-representation when there was *no indication that Jackson intended to proceed pro se or lacked funds to retain counsel*." Slip op. at 6 (emphasis added). However, the import of the advisement is not only to ensure that a defendant is making a conscious choice about self-representation, but also that the defendant's decision to forgo representation is knowing and voluntary. This is the essential point of Poynter. It is true that in that case the defendant actually appeared for trial without counsel and proceeded *pro se*. However, this factual difference from the instant case—in which no one appeared at trial at all on behalf of the defendant—does not render Poynter superfluous to our

---

[1] In an order dated October 3, 2002 the trial court revoked one attorney's *pro hac vice* admission. At that time, local counsel remained counsel of record. App. at 55-56. At a subsequent hearing on October 15, 2002 Jackson informed the court that he wished to discharge his local counsel and hire substitute counsel. In response, the trial court said, "I'm showing at this time that you have discharged Mr. Carpenter and Mr. Bennett as your attorneys and *they are relieved from any further representation of you at this time*." Id. at 64 (emphasis added). Jackson was thereafter instructed to hire substitute counsel by November 21, 2002. Id.

2

discussion.  Poynter does not stand for the proposition that a defendant waives Faretta warnings by simply not appearing.  Rather, Poynter provides an analytical framework for appellate courts to determine whether a defendant's conduct sufficiently indicated waiver of counsel.  We will consider "(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed *pro se*."  Poynter, 749 N.E.2d at 1127-28 (quoting Hoskins, 243 F.3d at 411).  Indeed, the Poynter/Hoskins analysis accounts for the majority's concern that defendants might try to manipulate the courts by strategically indicating the intent to hire private counsel and then not doing so.  Under the fourth factor, we will consider "whether the defendant's decision appears tactical or strategic in nature or seems manipulative and intending delay, inferring knowledge of the system and understanding of the risks and complexities of trial from more deliberative conduct."  Poynter, 749 N.E.2d at 1128 n.6 (citing United States v. Sandles, 23 F.3d 1121, 1129 (7th Cir. 1994)).  As we explained, the trial court "is in the best position to assess whether a defendant has knowingly and intelligently waived counsel, and we will most likely uphold the trial judge's decision" whether to proceed with trial at that time "where the judge has made the proper inquiries and conveyed the proper information, *and reaches a reasoned conclusion about the defendant's understanding of his rights and [the] voluntariness of his decision*."  Poynter, 749 N.E.2d at 1128 (emphasis added) (quoting Hoskins, 243 F.3d at 411).

In this case, the transcript reveals that the trial court made no finding that Jackson waived his right to representation by counsel.  The trial court did recite the history of the case and explained why counsel was not present, Tr. at 4-6, but the only finding by the court was that "the defendant's failure to appear . . . [was] a willful, knowing and voluntary act" such that the State could "proceed with the trial in absentia of the defendant."  Id. at 6.  This does not reflect an inquiry into the defendant's decision to not appear, the defendant's understanding of the perils of being tried without counsel, or the defendant's background and knowledge of the criminal justice system.  And it certainly does not present us with the requisite finding that Jackson voluntarily, knowingly, and intelligently waived his right to counsel.

That a defendant's failure to appear at trial by counsel does not effectively indicate knowing and intelligent waiver of the right to counsel is also supported by the Indiana Court of Appeals and several other jurisdictions which have addressed precisely the same issue. In both Carr v. State, 591 N.E.2d 640 (Ind. Ct. App. 1992), and Slayton v. State, 755 N.E.2d 232 (Ind. Ct. App. 2001), our Court of Appeals reached the same conclusion. Slayton, 755 N.E.2d at 236-37 (citation omitted) (Applying the Poynter/Hoskins factors and noting that the "lack of any advisement [of dangers] weighs heavily against finding a knowing and intelligent waiver," the court found that "the facts and circumstances of this case do not warrant a finding of a knowing and intelligent waiver of counsel."); Carr, 591 N.E.2d at 642 ("Carr's failure to appear at trial does not reflect a knowing, voluntary, and intelligent waiver of counsel. The court erred in finding waiver."). See also White v. Commonwealth, 203 S.E.2d 443, 444 (Va. 1974) (Where a defendant was tried *in absentia* without representation, the Supreme Court of Virginia held that the record "f[ell] short of establishing a knowing and intelligent waiver by the defendant of his right to counsel."); State v. Roberson, 638 S.E.2d 93, 95 (S.C. Ct. App. 2006) (Concluding that the defendant's failure to appear at trial did not constitute waiver of the right to counsel, the court cited the "significant fact that [the defendant] was never advised of proceeding without representation."); State v. Thompson, 584 S.E.2d 131, 136-37 (S.C. Ct. App. 2003) (Discussing the Indiana Court of Appeals' decision in Slayton, the court held that a defendant's failure to appear where the record does not reveal that the defendant "understood the dangers and disadvantages of self-representation" does not effect waiver of the right to counsel.); Commonwealth v. Ford, 715 A.2d 1141, 1146 (Pa. Super. Ct. 1998) (Concluding that a fugitive defendant's right to counsel was violated when he was tried *in absentia* without representation, the appellate court emphasized that the requirement that "trying a defendant without representation requires a knowing and intelligent waiver of defendant's right to counsel . . . is true even when a defendant is tried *in absentia*.").

I agree that a trial court cannot "hunt down a defendant to admonish him about the dangers and disadvantages of self-representation." Slip op. at 9. Such an inquiry is quite obviously impossible when a defendant fails to present himself before the court. But one's fugitive status is a separate wrong with its own consequences, and returned fugitives should be punished, if appropriate, for violations of court orders or statutes which compel their presence in

4

court.   <u>See</u> Ind. Code §§ 35-44-3-6; 34-47-3.   It is not grounds for forfeiting the right to representation by counsel.

For the foregoing reasons, I respectfully dissent and would reverse the judgment of the trial court.

Sullivan, J., concurs.