

FILED
Jul 03 2012, 9:31 am
CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**NANCY A. McCASLIN**
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RONALD B. HAWKINS,                )
                                  )
    Appellant-Defendant,          )
                                  )
        vs.                    )    No. 20A03-1112-CR-579
                                  )
STATE OF INDIANA,                 )
                                  )
    Appellee-Plaintiff.           )

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable David C. Bonfiglio, Judge
Cause No. 20D06-1101-FC-2

**July 3, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Ronald Hawkins appeals from his convictions of and sentences for two counts of Class C felony Non-Support of a Dependent Child.[1] Hawkins contends that he was denied due process when he was tried *in absentia* and without trial counsel, that his presence at sentencing by video only was erroneous, that the trial court improperly entered judgment on both counts as Class C felonies, and that the trial court abused its discretion in imposing consecutive sentences. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

On January 14, 2011, the State charged Hawkins, who at the time resided in North Carolina, with two counts of Class C felony non-support of a dependent child. On April 28, 2011, the trial court appointed a public defender for Hawkins. At a hearing on July 27, 2011, at which Hawkins was present, the trial court set a trial date of November 7, 2011, and advised Hawkins that he would be tried "in [his] absence" if he failed to appear. Tr. p. 10.

On October 10, 2011, Hawkins's attorney filed a motion to withdraw, a motion of which the chronological case summary ("CCS") indicates Hawkins received notice. The CCS entry also indicates that Hawkins was notified that a hearing had been set for October 19, 2011, and that failure to appear at the hearing would "result in warrant for the Defendant's arrest and withdrawal of Public Defender." Appellant's App. p. 4. On October 19, 2011, a hearing at which Hawkins participated by telephone was held on his attorney's motion to withdraw. Hawkins's attorney indicated that Hawkins had failed to participate in a telephonic trial preparation meeting on October 7, 2011, did not call to reschedule or cancel

---

[1] Ind. Code § 35-46-4-5(a) (2010).

the meeting, had not provided her with a contact number, and had not provided her with any information regarding a possible disability defense. Apparently due to difficulty in conducting the hearing telephonically, the trial court adjourned the hearing and reset it for October 26, 2011. The trial court ordered Hawkins to appear personally at the reset hearing. On October 26, 2011, the trial court held a second hearing on Hawkins's attorney's motion to withdraw. Hawkins did not appear at the hearing, after which the trial court granted his attorney's motion to withdraw and issued a warrant for his arrest. The CCS indicates that Hawkins was not sent notice that his attorney's motion to withdraw had been granted.

On November 7, 2011, a jury trial was held on the charges against Hawkins, a trial at which neither he nor any trial counsel appeared. Following trial, the jury found Hawkins guilty as charged. The trial court entered judgment of conviction on both counts as Class C felonies. On November 28, 2011, the trial court received a letter from Hawkins purporting to explain why he had not appeared at the October 26, 2011, hearing or the trial. On December 7, 2011, the trial court held a sentencing hearing at which Hawkins appeared by video. The trial court sentenced Hawkins to four years of incarceration for each count of non-support of a dependent child, to be served consecutively, but all suspended and to be administered through the Elkhart County Community Corrections Program.

## DISCUSSION AND DECISION

### I. Whether Hawkins was Properly Tried *in Absentia* and Without Counsel

Hawkins does not contend that he was improperly tried *in absentia* but argues that to try him without representation violated his due process rights. Specifically, Hawkins

3

contends that the record indicates that he was never put on notice that his trial counsel had withdrawn; he was never advised of his right to an attorney; and he did not voluntarily, knowingly, and intelligently waive that right.

## A. Notice of Withdrawal

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Hawkins contends that his due process rights were violated because he was not sent specific notice that his trial counsel's motion to withdraw was granted following the October 26, 2011, hearing. The record clearly indicates, and Hawkins does not dispute, however, that he *was* on notice that his attorney's motion to withdraw would be granted if he did not appear at the hearing on the motion, which, of course, he did not. On October 11, 2011, according to the CCS, Hawkins was notified that his "[f]ailure to appear [at the hearing on his attorney's motion to withdrawal] will result in warrant for the Defendant's arrest *and withdrawal of the Public Defender*." Appellant's App. p. 4 (emphasis added). Although Hawkins did appear telephonically at the October 19, 2011, hearing on the motion, the hearing was reset to October 26, a hearing at which he failed to appear. There is no indication in the record that the trial court ever rescinded its warning about what would occur if Hawkins failed to appear, and Hawkins does not claim that he was unaware of the consequences of his failure to appear. Under the circumstances, we conclude that Hawkins's

4

due process rights were not violated in this regard.

## B. Advisement of Right to Counsel

Hawkins notes that nothing in the record indicates that the trial court advised him of his right to counsel following his attorney's withdrawal. Hawkins, however, cites to no authority, and we are aware of none, that requires such a readvisement. The record indicates, and Hawkins does not dispute, that Hawkins was adequately advised of his right to an attorney and that one would be appointed at public expense if necessary. First, the CCS indicates that a public defender was, in fact, appointed at Hawkins's initial hearing. Moreover, on July 13, 2011, Hawkins signed a later-withdrawn guilty plea agreement that provided, inter alia, that "[t]he defendant understands that he has the right to have counsel represent him at all stages of this lawsuit, and if he cannot afford counsel, counsel will be appointed for him at public expense[.]" Appellant's App. p. 33. Hawkins does not claim that he did not understand this advisement or how it somehow would have lost effect. We conclude that Hawkins was adequately advised of his right to counsel.

## C. Waiver of Right to Counsel

"The right to be represented by counsel is also protected by both the Federal and Indiana Constitutions." *Jackson v. State*, 868 N.E.2d 494, 499 (Ind. 2007) (citing U.S. CONST. amend. VI; IND. CONST. art. 1, § 13). "The right to counsel can be waived only by a knowing, voluntary, and intelligent waiver." *Id.* (citing *Jones v. State*, 783 N.E.2d 1132, 1138 n. 2 (2003)). While we acknowledge that "a defendant's absence from trial does not constitute a waiver of the right to counsel in every case[,]" *id.*, this is one of those cases.

5

We find that the facts addressed by the Indiana Supreme Court in *Jackson*, in which

waiver of the right to counsel was found, are close enough to dictate the same result here. In

*Jackson*, the defendant had retained counsel but, at some point, decided to discharge him and

retain new counsel. *Id*. at 497. At a status conference on October 15, 2002, Jackson

informed the trial court that he wished to discharge his present counsel and requested

additional time to retain new counsel. *Id*.

> The trial court granted Jackson's request for additional time and rescheduled
> the jury trial for January 27, 2003 with two pretrial hearings on November 21,
> 2002 and December 26, 2002. Jackson was ordered to hire counsel by the
> November 21 pretrial conference. Neither Jackson, [Jackson's former trial
> counsel], nor anyone else suggested that Jackson might proceed pro se. The
> trial court entered a written order setting the dates of the new pretrial hearings
> and the jury trial, granting Jackson's request for additional time, noting that
> Jackson discharged his attorneys, and directing Jackson to retain substitute
> counsel by the next hearing. This order was handed to Jackson at the hearing.

*Id*. Neither Jackson nor any attorney appeared for either pretrial conference or the jury trial,

after which Jackson was convicted. *Id*.

Under the circumstances, the *Jackson* court concluded that Jackson had knowingly,

intelligently, and voluntarily waived counsel:

> The record in Jackson's case establishes that he repeatedly disregarded
> scheduled events. His last pretrial appearance in court ended with his counsel
> of record being discharged and an order setting a third and final trial date and
> directing Jackson to retain new counsel as he had said he would. He then
> failed to appear, failed to notify the court of his inability to retain counsel, and
> failed to request a continuance. We hold that this unexplained disregard of
> specific directions by the court and his own undertakings was sufficient to
> establish an intentional and inexcusable absence from trial and serves as a
> knowing, intelligent, and voluntary waiver of counsel.

*Id*. at 499. Additionally, the *Jackson* court held that the trial court was not required to

6

readvise Jackson regarding his right to counsel or, in the absence of any indication that he wished to proceed *pro se*, the perils of self-representation. *Id*. at 499-500.

Here, we have already concluded that Hawkins was on notice that his attorney was going to be allowed to withdraw and that he was adequately advised of his right to counsel. Despite knowing the consequences of his failure to appear at the October 26, 2011, hearing, Hawkins did, in fact, fail to appear at the hearing and the November 7 trial. At no point prior to trial is there any indication that Hawkins attempted to contact the court to request a new attorney, ask for a continuance, inform the court of transportation issues, express a desire to proceed *pro se*, or for any other reason. As in *Jackson*, we conclude that Hawkins's unexplained disregard for trial court directions, absence from trial, and apparent failure to even attempt communication serve as a knowing, intelligent, and voluntary waiver of counsel. We also conclude, as did the *Jackson* court, that the trial court was under no obligation to advise Hawkins of the perils of self-representation, as there is no indication that he ever intended to proceed *pro se*. *See id*. at 500. Hawkins has failed to establish that his trial *in absentia* and without counsel violated his due process rights.

In her dissent, Judge Vaidik contends that the facts here are distinguishable from those in *Jackson* and require a different result, but we respectfully disagree. We believe it is not significant, for example, that Hawkins was apparently not given specific notice that his attorney had withdrawn after the fact. Hawkins was on notice that his attorney's motion to withdraw would be granted, not *may* be granted, if he failed to appear at the reset hearing, and he subsequently failed to appear. Moreover, we do not find it significant that Jackson

7

retained counsel and told the trial court that he intended hire new counsel while Hawkins was represented by a public defender. Pursuant to *Jackson*, the need to advise regarding the pitfalls of proceeding *pro se* is triggered by an indication of a desire to proceed *pro se*, and Hawkins gave no such indication. While the facts here may not be quite as egregious as those in *Jackson*, this case still falls within *Jackson'*s holding. To hold otherwise would be to allow defendants like Hawkins to manipulate the system in an unacceptable fashion.

## II.  Whether the Trial Court Abused its Discretion in Sentencing Hawkins via Vidoeconference

Hawkins contends that the trial court abused its discretion in sentencing him via videoconference, arguing that Indiana Code section 35-38-1-4(a) requires that he be physically present in the courtroom during sentencing. Hawkins, however, failed to object below to being sentenced via videoconference and has therefore waived the argument for appellate consideration. The purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him. *Purifoy v. State*, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005), *trans. denied* (citation omitted). Hawkins has waived this claim.

## III.  Whether the Trial Court Abused its Discretion in Ordering Consecutive Sentences

Under our current sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d

8

218 (Ind. 2008). The decision to impose consecutive or concurrent sentences is within the trial court's sound discretion and is reviewed only for an abuse of discretion. *Williams v. State*, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008). An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Anglemyer*, 868 N.E.2d at 490. A single aggravating circumstance may support the imposition of consecutive sentences. *Hampton v. State*, 873 N.E.2d 1074, 1082 (Ind. Ct. App. 2007).

Hawkins contends only that the trial court failed to adequately discuss aggravating and mitigating circumstances at sentencing. In our view, the record indicates otherwise. The State mentioned that Hawkins's arrearage, $21,219.10 at sentencing, was well over the statutory requirement, he had a "limited criminal history[,]" and he had paid "little or no support for years on end." Tr. p. 76. The trial court, in sentencing Hawkins, also specifically noted his large arrearage, "very spotty payment history[,]" and "some criminal history but not a terribly lengthy history[.]" Tr. p. 77. It is abundantly clear that the trial court considered these circumstances to be aggravating, despite not actually using the term. The trial court did not abuse its discretion in imposing consecutive sentences. Moreover, even though neither party argues the point, we conclude that imposition of advisory sentences was appropriate.

**IV. Whether the Trial Court Erred in Entering Judgment for Two Class C Felonies**

Hawkins contends, and the State concedes, that the Indiana Supreme Court's decision in *Sanjari v. State*, 961 N.E.2d 1005 (2012), prevents the entry of two Class C felony convictions in this case. In *Sanjari*, the Court held that while an aggregate child support arrearage of $15,000 will serve to enhance a Class D felony non-support conviction to a

Class C felony, it cannot be used to enhance convictions related to multiple children living in the same household. *Id*. at 1008-09. Accordingly, we remand with instructions to reduce one of Hawkins's Class C felony convictions to a Class D felony.

## CONCLUSION

Hawkins's due process rights were not violated when he was tried in absentia and without counsel. Hawkins has waived for appellate review his argument that it was improper to sentence him via videoconference. The trial court did not abuse its discretion in imposing consecutive sentences. The trial court, however, erred in entering both convictions as Class C felonies. We remand with instructions to reduce one of Hawkins's Class C felony non-support of a dependent child convictions to a Class D felony and impose the advisory sentence, to be served consecutive to the sentence for the remaining Class C felony, for an aggregate sentence of five and one-half years. *See* Ind. Code §§ 35-50-2-6(a); -7(a).

We affirm the judgment of the trial court in part, reverse in part, and remand with instructions.

CRONE, J., concurs.

VAIDIK, J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

RONALD B. HAWKINS,  )
 )
    Appellant-Defendant,  )
 )
        vs.  )    No. 20A03-1112-CR-579
 )
STATE OF INDIANA,  )
 )
    Appellee-Plaintiff.  )
 )

**VAIDIK, Judge, concurring in part and dissenting in part.**

I respectfully dissent from the majority's conclusion that Hawkins knowingly, intelligently, and voluntarily waived his right to counsel. Because I believe that the facts in this case are readily distinguishable from the facts in *Jackson* and because of the importance of an attorney for a fair proceeding, I would reverse the trial court on this issue.

The right to be represented by counsel is protected by both the United States and Indiana Constitutions. U.S. Const. amend. VI; Ind. Const. art. 1, § 13. The right to counsel can be waived only by a knowing, voluntary, and intelligent waiver. *Jackson v. State*, 868 N.E.2d 494, 499 (Ind. 2007). Because of the paramount importance of the right to counsel in criminal proceedings and in recognition that the average defendant does not have the professional legal skills to protect himself at trial, courts will indulge every reasonable

11

presumption against waiver. *Johnson v. Zerbst*, 304 U.S. 458, 462-64 (1938); *United States v. Best*, 426 F.3d 937, 942 (7th Cir. 2005); *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001).

In *Jackson*, a closely divided Indiana Supreme Court recognized that a defendant's absence from trial does not constitute a waiver of the right to counsel in every case, but in that case, "the record support[ed] the trial court's specific finding that [the defendant's] absence from trial was a 'willful, knowing and voluntary act.'" 868 N.E.2d at 499. The defendant in *Jackson* at no time requested pauper counsel or indicated to the trial court that he could not afford an attorney. Instead, the defendant hired counsel from a prominent law firm, discharged counsel, and kept promising the trial court that he would hire new counsel. The defendant, however, neither hired new counsel nor appeared at his final two pretrial hearings or the trial. Our Supreme Court highlighted that the defendant "repeatedly disregarded scheduled events" and that the last time the defendant was before the trial court, his counsel was discharged, a new trial date was set, and he was ordered to find new counsel as he said he would. *Id.* The Court warned that a defendant "cannot manipulate a trial court to thinking that he or she will hire an attorney, fail to show up at trial or send an attorney, and then assert that the right to counsel was not waived because the trial court did not admonish the defendant about proceeding pro se." *Id.* at 500; *see also Poynter*, 749 N.E.2d at 1127-28.

Here, however, the facts are much different. Hawkins, who lived in North Carolina, appeared before the trial court on July 27, 2011. At this hearing, the trial court set a trial date

12

of November 7 and advised Hawkins that he would be tried in absentia if he did not appear. But on October 10, Hawkins's public defender filed a motion to withdraw, and a hearing was set. Hawkins was notified of both the motion and the hearing and was told that his failure to appear at the hearing would result in a warrant for his arrest and the withdrawal of his public defender. The hearing was held on October 19, and Hawkins appeared by telephone. Because of apparent difficulties in conducting the hearing by telephone, the trial court adjourned the hearing, reset it for October 26, and ordered Hawkins to appear. Hawkins, however, did not appear at the October 26 hearing, following which the trial court granted his public defender's motion to withdraw and issued a warrant for Hawkins's arrest. Critically, Hawkins was not notified that his public defender's motion to withdraw had in fact been granted.

On the morning of Hawkins's November 7 trial, which was less than two weeks after his public defender's withdrawal, neither Hawkins nor an attorney was present. The State told the trial court that it had learned that Hawkins was arriving around 1:30 p.m. because he had to take a bus to Indiana. Tr. p. 34. Although waiting thirty minutes, the trial court conducted the trial in Hawkins's absence anyway. Hawkins arrived several hours after his trial was concluded. Appellant's App. p. 97. Hawkins was told that his trial was over and was taken into custody. *Id.* Hawkins later sent a letter to the court explaining his absence.

Unlike in *Jackson*, Hawkins did not repeatedly ignore scheduled events. Instead, Hawkins (1) did not appear at the rescheduled October 26 hearing and (2) showed up several hours late to his trial, which had already been conducted in his absence. This does not

13

amount to repeatedly ignoring scheduled events. Second, unlike in *Jackson*, where the defendant had the ability to and did hire an attorney, here Hawkins is indigent and depended on the court for pauper counsel. Third, unlike in *Jackson*, where the defendant discharged his counsel and told the trial court that he was going to hire new counsel, Hawkins did not discharge his counsel, did not indicate he could or would hire new counsel, and did not know with certainty that his public defender's motion to withdraw had been granted. And while Hawkins may have been warned earlier that his failure to appear would result in the withdrawal of his public defender, notice was not sent to him that his public defender had in fact been removed. Fourth, here less than two weeks passed between the discharge of Hawkins's public defender and his trial. Finally, and most importantly, there is no indication here that Hawkins was trying to "game" the system like the defendant in *Jackson*.

While I do not condone Hawkins's failure to timely contact the trial court to say that he would be late for his November 7 trial, given these flimsy facts, there is no indication that Hawkins was trying to "game" the system, and the law indulges every reasonable presumption against a waiver of this fundamental right, *Johnson*, 304 U.S. at 464, I do not believe that the record supports the conclusion that Hawkins knowingly, intelligently, and voluntarily waived his right to counsel.[2] I would reverse the trial court and remand the case for a new trial.

---

[1] I agree with the majority that this case has nothing to do with advising Hawkins regarding the pitfalls of proceeding pro se. Rather, this case deals with the waiver of counsel.