ATTORNEY FOR APPELLANT
Nancy A. McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 20S03-1208-CR-499

RONALD B. HAWKINS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Elkhart Superior Court, No. 20D06-1101-FC-2
The Honorable David C. Bonfiglio, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 20A03-1112-CR-579

**February 19, 2013**

**David, Justice.**

When a criminal defendant fails to appear at trial, it is appropriate to consider whether or not the absence waives his right to counsel and right to be present at trial before trying that defendant in absentia. Such was the case here, where a defendant who lived in North Carolina arrived late for trial in Elkhart, Indiana, only to discover that he had already been convicted.

Based on the particular facts and circumstances of this case, however, we conclude that trying the defendant in absentia, without counsel, was not the proper course of action for the trial judge to take. Accordingly, we vacate the defendant's convictions and remand for a new trial.

**Facts and Procedural History**

On January 14, 2011, a North Carolina resident named Ronald Hawkins was charged in Elkhart County, Indiana, with two counts of non-support of a dependent—both as class C felonies.[1] Hawkins appeared in court on April 25, pled not guilty, and a public defender was appointed to represent him.

On July 7, Hawkins signed a plea agreement. Trial court accepted the plea at a July 13 hearing, for which Hawkins appeared by video. But at a July 27 sentencing hearing, Hawkins—appearing in person—withdrew the agreement and sought a jury trial. At that time, the trial court set the matter for a November 7 trial date and told Hawkins that if he did not appear in person he would be tried in absentia.

On October 10, Hawkins's public defender filed a motion to withdraw, citing a lack of cooperation from her client. The trial court notified Hawkins of the motion, telling him that a hearing on the motion would be held on October 19 and stating that "[f]ailure to appear will result in a warrant for the Defendant's arrest and withdrawal of Public Defender." Hawkins appeared at the October 19 hearing by telephone.

At some point during the proceeding, however, Hawkins started having trouble hearing what was being said by the judge and attorneys, leading the court to reschedule the matter for

_____

[1] Ind. Code § 35-46-1-5(a) (2008).

2

October 26. The trial judge reiterated the new hearing date several times, along with a requirement that Hawkins appear in person. The court did not tell Hawkins that the motion to withdraw would be granted if Hawkins failed to appear at the second hearing. Hawkins then failed to appear for the October 26 hearing, and in his absence the trial judge granted the motion to withdraw but kept the original November 7 trial date.

Hawkins's trial was set to convene at 8:30 a.m. on November 7, but that time came and went without him present. Hawkins did not communicate any reason for his absence to the court or request a continuance. The deputy prosecutor, however, received word from one of Hawkins's relatives that Hawkins was on a bus from North Carolina and anticipated arriving at 1:30 p.m. The deputy prosecutor reported this to the court, but the court proceeded with voir dire and the trial after waiting until 9:00 a.m., having never received any direct communications from Hawkins himself. Hawkins was tried in absentia and the jury found him guilty on both counts. He arrived at the courthouse that afternoon and was immediately taken into custody.

On November 28, the trial court received a letter from Hawkins—still in jail awaiting sentencing—explaining that he had been unable to afford transportation for the October 26 hearing and his original transportation plan on November 7 fell through, requiring him to take the bus from North Carolina to Indiana. Nevertheless, on December 5 the trial court sentenced Hawkins to eight years in community corrections and a fine, all to be suspended provided Hawkins paid child support. Hawkins appeared at his sentencing hearing via video from jail.

Hawkins appealed, raising three issues: (1) that his trial in absentia, without being notified that his public defender's motion to withdraw had been granted and with nothing in the record indicating that he waived his right to counsel, constituted a denial of due process; (2) that the trial court abused its discretion in sentencing Hawkins by video; and (3) that the trial court's sentence was improper in that it consisted of consecutive sentences. A divided panel of the Court of Appeals affirmed in part and reversed in part. Hawkins v. State, 970 N.E.2d 762 (Ind. Ct. App. 2012).

3

The Court of Appeals found that Hawkins's sentence was improper insofar as it contravened this Court's decision in Sanjari v. State, 961 N.E.2d 1005 (Ind. 2012), and remanded for resentencing as one class C felony and one class D felony, but affirmed insofar as the sentences were ordered to be served consecutively.[2] Hawkins, 970 N.E.2d at 767–68. They also found that Hawkins had waived appeal on the issue of his sentencing by video by failing to contemporaneously object at the sentencing hearing. Id. at 767.

The Court of Appeals panel split on the question of whether Hawkins was properly tried in absentia. The majority concluded that Hawkins failed to establish any due process violation, relying upon this Court's opinion in Jackson v. State, 868 N.E.2d 494 (Ind. 2012), because Hawkins was on notice that his attorney intended to withdraw and had been informed several times that he would be tried in absentia if he failed to appear. Hawkins, 970 N.E.2d at 766–67. One judge on the panel dissented, finding the facts of Hawkins's case to be distinguishable from Jackson, and would have instead remanded for a new trial. Id. at 768–70.

We granted transfer, Hawkins v. State, 970 N.E.2d 762 (Ind. 2012) (table), thereby vacating the decision of the Court of Appeals. Ind. Appellate Rule 58(A).

## I.    Hawkins's Trial In Absentia

Hawkins presents three specific contentions that his trial in absentia denied him due process of law—all of which revolve around his right to counsel, not his right to be present at trial. First, Hawkins asserts that he never received actual notice that his public defender's

---

[2] In Sanjari, we held that an aggregate child support debt in excess of $15,000 serves as an enhancement to the crime of non-support of a dependent, raising it from a class D felony to a class C felony. Sanjari, 961 N.E.2d at 1007–08. However, a defendant's single lump-sum debt could not enhance two class D felonies to two class C felonies—it could only enhance one such charge. Id. at 1008–09.

motion to withdraw had been granted. Second, he claims that the record does not reflect that he was properly advised of his right to an attorney. Finally, he claims that the record does not reflect a voluntary, knowing, and intelligent waiver of that right.[3] Because we find it dispositive, we address only the last of these contentions and assume *arguendo* that Hawkins received constructive notice of his counsel's withdrawal and that the advisements he received during earlier proceedings concerning his right to counsel were still sufficient after his counsel actually withdrew.

The right to counsel is one protected by both the U.S. and Indiana constitutions. U.S. Const. amend. VI; Ind. Const. art. 1, § 13. It can be relinquished only by knowing, voluntary, and intelligent waiver. Jackson, 868 N.E.2d at 499. Courts will indulge every reasonable presumption against waiver of the right, and likewise will not presume the defendant's acquiescence in its loss. Johnson v. Zerbst, 304 U.S. 458, 464 (1938); see also Poynter v. State, 749 N.E.2d 1122, 1125–26 (Ind. 2001). Moreover, "[t]he constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel." Johnson, 304 U.S. at 465. "This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." Id. "[I]t would be fitting and appropriate for that determination to appear upon the record." Id.

In Jackson, we pointed out that "a defendant's absence from trial does not constitute a waiver of the right to counsel in every case." Jackson, 868 N.E.2d at 499. Nevertheless, we found waiver because the defendant's absence was "intentional and inexecusable." Id. at 496. Jackson had been charged with several drug and firearm offenses, appeared at his initial hearing, and hired an attorney. A second attorney was admitted *pro hac vice* as counsel for Jackson, and

---

[3] In his brief, Hawkins styles these last two arguments under one heading, but the failure to properly advise of the right to an attorney and the validity of a subsequent waiver of that right are two distinct issues.

both attorneys then attended some pretrial conferences, whereas Jackson attended others by himself. Eventually, the second attorney's *pro hac vice* status was revoked and Jackson was ordered to appear with an attorney licensed in Indiana. No change was made to Jackson's trial date, which had been scheduled for some time.

At a final status conference a week before trial, Jackson and his first attorney appeared and informed the trial court that Jackson intended to retain new counsel and discharge both his prior attorneys. The trial court continued the trial date for roughly three months so that Jackson could retain new counsel and that counsel could prepare, with several intervening pretrial conferences scheduled as well. Jackson was to have new counsel by the first of those pretrial conferences.

Neither Jackson nor counsel appeared at either of the two intervening pretrial conferences, nor did anyone appear at his trial. The trial court found that Jackson had been notified in writing and orally of the trial date, and held that Jackson's failure to appear was willful, voluntary, and knowing. Id. at 497. Jackson was then tried and convicted in absentia.

This Court rejected Jackson's claim that his failure to appear at trial did not constitute a waiver of his right to counsel. Instead, we concluded that "the record support[ed] the trial court's specific finding that Jackson's absence from trial was a 'willful, knowing and voluntary act.'" Id. at 499. He "repeatedly disregarded scheduled events." Id. His final pretrial conference concluded with "an order setting a third and final trial date and directing Jackson to retain new counsel . . . . He then failed to appear, failed to notify the court of his inability to retain counsel, and failed to request a continuance." Id. Therefore, we held that "this unexplained disregard of specific directions by the court and his own undertakings was sufficient to establish an intentional and inexcusable absence from trial and serves as a knowing, intelligent, and voluntary waiver of counsel." Id.

In no way, shape, or form, should our opinion today be taken as approval for Hawkins's actions as a defendant facing criminal charges. Nor should it be taken as an invitation for

6

defendants to "game the system." It is well known that trial courts face tremendous challenges in terms of case loads and staffing limitations, and every delay (intentional or not) necessarily has a carry-over effect to every other person's access to the courtroom—and by extension, their access to justice.

We therefore reiterate the theme of <u>Jackson</u>: that such willful, knowing, and voluntary misconduct aimed at manipulating the court system for one's own benefit will not be looked upon with anything resembling favor. Nevertheless, the record in this case indicates less than the egregious misbehavior from <u>Jackson</u>—and it does not support a finding that Hawkins's failure to appear at trial constituted a waiver of his right to counsel.

Here, Hawkins appeared at every scheduled event until the October 26 pretrial conference and his subsequent trial. And while those were significant absences, they occurred over a relatively short period: a three-week span following his last appearance (by telephone) at the hearing on his public defender's motion to withdrawal. And during that period, he was never actually notified that the court had granted his public defender's motion, and thus would be left to assume—at best—that he was now without counsel.

Certainly Hawkins could have contacted the court to find whether he still had a lawyer, and we emphasize again that we are not attempting to paint Hawkins's conduct as that of the ideal criminal defendant. But his conduct is far better, we think, than Jackson. Jackson had the money to hire his own attorney—two attorneys, in fact—then affirmatively told the court at the eleventh hour that he was discharging both and hiring another, and was given an additional three months to hire this new attorney and prepare for trial. Significantly, this directive came in the form of a written order from the court, personally handed to Jackson that same day. Yet in those three months, neither Jackson nor an attorney for him appeared at either of two pretrial hearings or his trial, nor did they contact the court to explain the absences.

Here, at least Hawkins contacted the court by letter after the trial (albeit several weeks after the trial) to explain that he could not afford to travel back and forth from North Carolina to

Indiana twice in such a short span of time—a claim bolstered by his indigent status—and that he had instead prioritized the trip for the day of trial. While this may be a post-hoc attempt by Hawkins to justify his misbehavior, it is more reasonable to assume its veracity than assume it shows a willful and deliberate refusal to attend to his own criminal proceedings and waive his right to counsel. This is particularly true when, as we have discussed, Hawkins may not have realized that his public defender was no longer involved. At the very least, it cuts against the idea that Hawkins was manipulating the system for his own personal gain.

Finally, we note that here the trial court did not make this decision in a vacuum. The deputy prosecutor made the court aware that Hawkins was apparently trying to get to the courthouse, but would not arrive until early that afternoon. Nevertheless, the trial court decided to proceed, trying Hawkins in absentia after waiting only thirty minutes—and without attempting to confirm or deny the validity of the deputy prosecutor's report—because Hawkins had not directly communicated to the court a reason for his absence or a request for a continuance.

This again is a far cry from Jackson. While we have stated the importance of parties respecting the trial court's schedule, and the impact on others when that schedule is changed without warning, at the same time we emphasize that a trial court is the protector of more than just its own calendar. In criminal cases it must also vigorously protect the rights of those who are called before it as defendants, as well as the interests of the State and the victims. We still "cannot [and do not] expect a trial court to hunt down a defendant," Jackson, 868 N.E.2d at 501, and certainly it would have been a burden to hold the jurors until Hawkins arrived later that day, and the delay probably would have impacted other matters scheduled for that day or the next. But in light of the particular facts here, we cannot say that those potential disruptions carry enough weight to say that Hawkins's conduct amounted to an intentional and inexcusable absence such that he waived his fundamental right to counsel.

Accordingly, based on the facts and circumstances of this particular case, we find that Hawkins's failure to appear at trial was not a waiver of his right to counsel and it was

inappropriate to try him in absentia without representation. We therefore vacate his convictions and sentence and remand for a new trial.

## II. Hawkins's Sentencing Proceeding and Sentence

Because we reverse the trial court's decision to try Hawkins in absentia and remand for a new trial, the issues he raises with respect to his sentence are necessarily moot. However, we write briefly on them just to highlight two points.

First, we note that we handed down our opinion in Sanjari after Hawkins was sentenced. However, as the Court of Appeals pointed out—and the State concedes (Appellee's Br. at 18)—Sanjari is now controlling with respect to the enhancement of Hawkins's charges from class D to class C felonies. Accordingly, if Hawkins is convicted on both counts for the same child support arrearages, only one conviction may be enhanced to a class C felony.

Second, Indiana Code § 35-38-1-4(a) provides that a criminal defendant "must be personally present at the time sentence is pronounced." Indiana Administrative Rule 14(A)(2)(c) further provides that a trial court "may use audio visual telecommunication to conduct . . . [s]entencing hearings pursuant to IC 35-38-1-2 when the defendant has given a written waiver of his or her right to be present in person and the prosecution has consented." Hawkins argues that nothing in the record reflects a waiver of his right to be present in person, and therefore it was improper for the trial court to sentence him via video conference. (Appellant's Br. at 20–21.)

The State contends that "personally present," as used in subsection 4(a) means only that a defendant may not simply be represented by counsel; the defendant himself must appear in person. (Appellee's Br. at 15.) But that appearance in person, the State says, can be accomplished by video just as well as a physical presence—and the defendant would still gain the benefits inherent to physical appearance, such as being directly informed of the verdict, testifying on his own behalf or making unsworn statements, and observing the demeanor of

9

witnesses presented against him. (Appellee's Br. at 15–16.) Alternatively, if we take Hawkins's interpretation of subsection 4(a) and Administrative Rule 4, the State argues that Hawkins waived this argument by failing to object at the sentencing hearing.

We think the State's proposed interpretation of "personally present" would effectively render Rule 14(A)(2)(c) meaningless. If a defendant could be "personally present" at sentencing via video conference and satisfy § 35-38-1-4(a), there would be no reason for the Administrative Rules to explicitly require the defendant to give "a written waiver of his or her right to be present in person" before that video conference could be held.

A better interpretation—and one that gives force to both provisions—is that "personally present" and "present in person," as used in Indiana Code § 35-38-1-4(a) and Indiana Administrative Rule 14(A)(2)(c), respectively, refer to the defendant's actual physical presence. Thus, a trial court may conduct a sentencing hearing at which the defendant appears by video, but only after obtaining a written waiver of his right to be present and the consent of the prosecution.[4]

Here, Hawkins is correct that no written waiver of his right to be present in person at his sentencing hearing exists in the record, nor is there any showing that the prosecution consented to his appearance by video. But because this issue is moot in light of our remand for a new trial, we need not decide the impact of Hawkins's failure to contemporaneously object or weigh the impact of denying a defendant the right to be physically present for sentencing under fundamental error analysis. Going forward, though, we would expect to see what our rules

---

[4] In that regard, we note that subsection 4(a) is written in such a way that it conveys not only the defendant's *right* to be present at sentencing, but also his *obligation* to be present. This is why the Administrative Rule turns not just on the defendant's written waiver, but also on the prosecution's consent. Just as the defendant benefits at sentencing from being able to directly view witness demeanor and present personal emotion in his own testimony, so too might the State benefit—in pursuing a higher sentence—from presenting the defendant in person as opposed to a more sterile video conference.

require reflected in the record, and would urge trial courts to be cautious of using procedures—however efficient they may be—without following all of the steps required to implement those procedures in a way that is fair to all involved.

## Conclusion

We therefore vacate Hawkins's convictions and sentence for class C felony non-support of a dependant and remand this matter for a new trial.

Dickson, C.J., and Rucker, Massa, and Rush, JJ., concur.