

FILED

Sep 19 2018, 10:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

C.S., Jr.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

September 19, 2018

Court of Appeals Case No.
18A-JV-862

Appeal from the Elkhart Circuit
Court

The Honorable Michael A.
Christofeno, Judge
The Honorable Deborah A.
Domine, Magistrate

Trial Court Cause No.
20C01-1712-JD-612

**Friedlander, Senior Judge.**

On December 11, 2017, Elkhart police officers encountered C.S., Jr. after responding to a report of gunshots. During this encounter, C.S., Jr. turned his back on the officers, reached into his waistband, removed a loaded 9mm firearm, and placed the firearm on the ground. The officers found a spent 9mm casing and a live 9mm round on the ground nearby.

On December 18, 2017, the State filed a delinquency petition alleging that C.S., Jr. was delinquent for committing what would be Class A misdemeanor dangerous possession of a firearm if committed by an adult. The next day, C.S., Jr. admitted to the allegation. The juvenile court adjudicated him delinquent and ordered that he be made a temporary ward of the Department of Correction ("DOC") for completion of a diagnostic evaluation. The juvenile court further ordered that upon completion of the evaluation, C.S., Jr. would return to the juvenile detention center pending an additional hearing regarding disposition.

Residential placement was recommended after completion of the diagnostic evaluation. A DOC facility psychologist also completed a psychological evaluation and recommended residential placement. In making this recommendation, the psychologist noted C.S., Jr.'s previous failures at home-based programming. The psychologist opined that C.S., Jr. required more structured monitoring than home-based services could provide given his recent suicide attempt and "rather violent history." Appellant's App. Vol. 2, p. 70.

In addition to the diagnostic and psychological examinations, the probation department considered that, while in the juvenile detention center prior to being sent to the DOC for his evaluation, C.S., Jr. had attempted to commit suicide and displayed aggressive behavior. It also considered that C.S., Jr. had informed a social worker that he hated being in the juvenile detention center and was "going to make the staff's life miserable." *Id.* at 48. The social worker noted that he believed residential care was the least restrictive option and there were few alternatives for C.S., Jr.'s placement. The probation department investigated residential placements, ultimately recommending placement in the DOC.

During a March 6, 2018 hearing, the juvenile court heard evidence supporting the probation department's recommended disposition. C.S., Jr. appeared at this hearing via video conference from the juvenile detention center. At the end of the hearing, the juvenile court committed C.S., Jr. to the DOC.

C.S., Jr. raises two issues on appeal. First, he argues that the juvenile court abused its discretion by committing him to the DOC. Second, he argues that the juvenile court erred by having him appear at the March 6, 2018 hearing via video conference.

# 1. Disposition

The choice of a specific disposition of a juvenile adjudicated a delinquent child is within the sound discretion of the juvenile court, subject to the statutory considerations of the welfare of the child, the community's safety, and the Indiana Code's policy of

favoring the least harsh disposition. A juvenile disposition will not be reversed absent a showing of an abuse of discretion. An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.

*E.H. v. State*, 764 N.E.2d 681, 684 (Ind. Ct. App. 2002) (internal citations omitted), *trans. denied*.

[8] Generally, Indiana Code section 31-37-18-6(1)(A) (1997) requires that a juvenile court enter a dispositional decree that is "in the least restrictive (most family like) and most appropriate setting available." Section 31-37-18-6, however, "requires placement in the least restrictive setting *only* 'if consistent with the safety of the community and the best interest of the child.'" *J.S. v. State*, 881 N.E.2d 26, 29 (Ind. Ct. App. 2008) (quoting Ind. Code § 31-37-18-6) (emphasis added). "Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *J.S.*, 881 N.E.2d at 29.

[9] In this case, the team that completed C.S., Jr.'s diagnostic evaluation, a DOC psychologist, and a social worker all recommended residential placement. In addition to evidence that C.S., Jr. was found in possession of a loaded firearm, the recommendations were based, at least in part, on evidence indicating that C.S., Jr. had displayed a pattern of suicidal tendencies and a history of violent and delinquent behavior. He had frequently abused drugs and alcohol and had been suspended from school more than twenty times and expelled twice. He

had failed to positively respond to prior opportunities for rehabilitation. He had also displayed a general lack of respect for authority figures.

[10]     The recommendations of the service providers, coupled with the probation department's opinion that C.S., Jr. was too great a risk for community placement, support the juvenile court's disposition. As such, we conclude that the juvenile court did not abuse its discretion in committing C.S., Jr. to the DOC.

## 2. Appearance Via Video Conference

[11]     The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a criminal. For this reason the statutory scheme of dealing with minors is vastly different than that directed to an adult who commits a crime. Juvenile judges have a variety of placement choices for juveniles who have delinquency problems…. *None of these commitments are considered sentences*.

*Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987) (emphasis added).

[12]     C.S., Jr. argues that the juvenile court erred by having him appear at the March 6, 2018 hearing via video conference because he did not sign a written waiver of his right to appear at the hearing in person. In support, he cites to the Indiana Supreme Court's opinion in *Hawkins v. State*, which establishes that a criminal defendant has a right to be "personally present" at sentencing and that a trial court "may conduct a sentencing hearing at which the defendant appears by video, but only after obtaining a written waiver of his right to be present and the consent of the prosecution." 982 N.E.2d 997, 1002-03 (Ind. 2013) (discussing

Ind. Code § 35-38-1-4(a) & Ind. Admin. R. 14(A)(2)(c)). C.S., Jr.'s reliance on *Hawkins*, however, is misplaced.

[13] Unlike the defendant in *Hawkins*, C.S., Jr. was not a criminal defendant appearing before the court for a sentencing hearing. C.S., Jr. was a delinquent child appearing before the juvenile court for a modification hearing. Given the Indiana Supreme Court's express statement that commitment of a delinquent child is not considered a sentence, *Jordan*, 512 N.E.2d at 408, we conclude that the rules relating to the sentencing of criminal offenders do not apply. Rather, we look to the statutes relating to juvenile delinquency proceedings.

[14] Indiana Code section 31-37-18-1.3 (2007) requires that a delinquent child be given notice of and an opportunity to be heard during a dispositional hearing. Nothing in the statute, however, requires that the delinquent child be physically present for either a dispositional or modification hearing. C.S., Jr. does not claim that he was not given adequate notice of the March 6, 2018 hearing. The record clearly demonstrates that he participated in the hearing via video conference. We conclude that C.S., Jr.'s presence via video conference was sufficient to satisfy the requirements of Indiana Code section 31-37-18-1.3.

[15] Judgment affirmed.

Pyle, J., and Altice, J., concur.