


FILED

Oct 01 2019, 11:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-JV-136

## C.S., Jr.,
*Appellant (Defendant),*

–v–

## State of Indiana,
*Appellee (Plaintiff).*

---

Supreme Court Case No. 19S-JV-137

## Z.T.,
*Appellant (Defendant),*

–v–

## State of Indiana,
*Appellee (Plaintiff).*

---

Argued: April 25, 2019 | Decided: October 1, 2019

Appeals from the Elkhart Circuit Court,
Nos. 20C01-1712-JD-612, 20C01-1710-JD-540
The Honorable Michael A. Christofeno, Judge
The Honorable Deborah A. Domine, Magistrate

On Petitions to Transfer from the Indiana Court of Appeals,
Nos. 18A-JV-862, 18A-JV-1656

---

**Opinion by Justice Goff**
Chief Justice Rush and Justices Massa and Slaughter concur.
Justice David concurs in part, dissents in part with separate opinion.

**Goff, Justice.**

In separate proceedings, two teenagers were sent to the Indiana Department of Correction after a hearing where they appeared by video rather than in person. Although the main characters differ, everything else about the teenagers' stories, from the start of the hearing to this point, is nearly identical. The teenagers each appeared by Skype at a hearing to decide whether their juvenile dispositional decrees should be modified to make them wards of the Department of Correction. Although the teenagers did not object to participating via Skype, nothing in the record indicates that they agreed to do so or that the trial court found good cause for their remote participation. At the end of the hearings, both teenagers were made wards of the Department of Correction. They separately appealed, arguing primarily that their remote participation in their hearings did not comply with Indiana Administrative Rule 14. We find that Rule 14 generally governs the use of telephones and audiovisual telecommunication tools in our trial courts, including in juvenile cases, and Rule 14(B) applies to the types of hearings involved here. But we ultimately conclude that the teenagers have failed to show that their remote participation resulted in fundamental error. Therefore, they cannot gain the relief they seek, and we affirm the trial court. However, we close this opinion with guidance to courts and attorneys so that this procedural story is not repeated.

## Factual and Procedural History

Although different underlying circumstances and separate juvenile proceedings led them to the Department of Correction (DOC), the juveniles involved in both cases, C.S., Jr. and Z.T. (or, the Juveniles), experienced nearly identical procedures along the way.[1] The same trial court judge separately adjudicated both C.S., Jr. and Z.T. delinquents in

---

[1] Because of the similarities of the procedure and arguments in both cases, we held a combined oral argument and choose to issue a single opinion addressing both cases.

late 2017.  The Juveniles were physically present at these hearings.  The same judge held separate disposition-modification hearings in 2018 where the State requested that the Juveniles be made wards of the DOC.[2]  Both C.S., Jr. and Z.T. participated in these disposition-modification hearings via the videoconferencing application Skype.  Neither C.S., Jr. nor Z.T. objected on the record to appearing via Skype, but there is also no indication in the record that the parties agreed to this type of remote participation or that the trial court found good cause for this procedure.  During these hearings, testimony from multiple people—including C.S., Jr. and Z.T.—was noted as "indiscernible to [the court] reporter."  *See, e.g.*, *C.S., Jr.* Tr. Vol. II, p. 43; *Z.T.* Tr. Vol. II, p. 47.  At the conclusion of both disposition-modification hearings, the trial court granted the State's request and made each juvenile a ward of the DOC.  C.S., Jr. and Z.T. both indicated their intent to appeal, and the trial court appointed a new attorney to represent both juveniles in their separate appeals.

Before the Court of Appeals, C.S., Jr. brought a two-pronged attack.  First, C.S., Jr. argued that the trial court abused its discretion in granting wardship to the DOC.  Second, relying on Indiana Administrative Rule 14 and this Court's interpretation of Rule 14 in the context of criminal sentencing, C.S., Jr. argued that he had a right to be physically present at the modification hearing and the trial court erred when it went forward with the hearing despite his Skype participation.  The Court of Appeals affirmed the trial court in a published decision.  *C.S., Jr. v. State*, 110 N.E.3d 433, 437 (Ind. Ct. App. 2018).  In concluding that C.S., Jr.'s Skype participation was acceptable, the panel differentiated criminal defendants from juveniles and found that C.S., Jr. was given all that was required by statute: notice of the modification hearing and an opportunity to be heard.  *Id.* at 436–437 (discussing *Hawkins v. State*, 982 N.E.2d 997, 1002–03 (Ind. 2013), and Ind. Code § 31-37-18-1.3 (2007)).  C.S., Jr. sought rehearing, arguing that the Court of Appeals did not adequately address his

---

[2] At both hearings, the same deputy prosecutor represented the State, and the same attorney represented both C.S., Jr. and Z.T.

arguments based on Administrative Rule 14, but the Court of Appeals denied the petition.

Z.T. brought a similar two-pronged attack, contending that the trial court erred in granting wardship to the DOC and in conducting the hearing with Z.T. participating via Skype. However, Z.T. built on C.S., Jr.'s argument and specifically argued that the trial court's holding of a hearing at which Z.T. was not physically present contravened Administrative Rule 14 and thereby denied him due process. In a memorandum decision, the Court of Appeals affirmed the trial court. *Z.T. v. State*, No. 18A-JV-1656, 2018 WL 6332469, *4 (Ind. Ct. App. Dec. 5, 2018). Relying in part on *C.S., Jr.* to conclude that Z.T.'s Skype participation was adequate, Z.T.'s panel likewise distinguished criminal defendants from juveniles and found that Z.T. had notice of the modification hearing and an opportunity to be heard at it. *Id.* at *3. The panel then went a step further and concluded that Rule 14 did not apply to the juvenile modification hearing in which Z.T. participated. *Id*.

C.S., Jr. and Z.T. separately sought transfer and made nearly identical arguments centered on the propriety of their remote participation in the modification hearings below. Additionally, the Indiana Public Defender Council, Juvenile Defense Project appeared as amicus curiae aligned with the Juveniles in both cases. We granted C.S., Jr.'s and Z.T.'s petitions to transfer to address the issue of their Skype participation at their modification hearings, thereby vacating the Court of Appeals opinions. *See* Ind. Appellate Rule 58(A). We summarily affirm both Court of Appeals panels below on the issue of whether the trial court abused its discretion in granting wardship of C.S., Jr. and Z.T. to the DOC. *See* App. R. 58(A)(2).

## Standard of Review

This case involves a question of the scope and applicability of Indiana Administrative Rule 14, and we interpret our administrative rules de novo. *See Hawkins*, 982 N.E.2d at 1002–03 (interpreting Ind. Administrative Rule 14 de novo).

However, before the trial court, neither C.S., Jr. nor Z.T. objected to appearing at their modification hearings by video, so they must show that the alleged error was fundamental to gain relief. *Kelly v. State*, 122 N.E.3d 803, 805 (Ind. 2019) ("Fundamental error is an exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal."). "An error is fundamental, and thus reviewable on appeal, if it 'made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm.'" *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (quoting *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014)). "[F]undamental error is a daunting standard that applies 'only in egregious circumstances'" where the trial judge should have corrected the situation sua sponte. *Knapp*, 9 N.E.3d at 1281 (citation omitted).

# Discussion and Decision

C.S., Jr. and Z.T. challenge the process by which the trial court modified their juvenile dispositional decrees and made them wards of the DOC. They argue that the trial court violated Administrative Rule 14 and thereby denied them due process when it had them participate in their disposition-modification hearings by Skype without their express agreement or a finding of good cause. We proceed in four parts. First, we consider the scope and applicability of Rule 14, determining if the rule applies in these situations. Second, we determine if the trial court followed Rule 14 here. Third, we assess whether the alleged error in having C.S., Jr. and Z.T. participate in their hearings remotely resulted in fundamental error entitling them to relief. Fourth, we offer guidance to courts and parties faced with these situations going forward.

## I. Administrative Rule 14 applies to juvenile disposition-modification hearings.

Administrative Rule 14 governs the use of telephones and audiovisual telecommunication tools in both criminal and civil matters in our trial courts. *See generally* Admin. R. 14. Sections A and B of the rule explain

when these modes of remote participation can be used in various situations. Section C then details the minimum technical requirements for telephones or audiovisual telecommunication devices under Rule 14. The parties agree that Rule 14 can apply in juvenile cases generally, but they disagree as to how the various sections of the rule might apply to the hearings conducted below.

## A. Rule 14(B) governs the use of telephones and audiovisual telecommunication devices in juvenile disposition-modification hearings.

Section A of Rule 14 provides specific conferences, hearings, and proceedings where remote participation under the rule is permissible. Admin. R. 14(A). These specific proceedings include pre-trial conferences, certain initial hearings in criminal cases, and misdemeanor guilty plea hearings. Admin. R. 14(A)(1)(a), (A)(2)(a), (A)(2)(b). The only juvenile delinquency hearings listed in Rule 14(A) are "detention hearing[s] pursuant to IC 31-37-6 or . . . periodic review hearing[s] pursuant to IC 31-37-20-2." Admin. R. 14(A)(2)(g). Because the disposition-modification hearings held in C.S., Jr.'s and Z.T.'s cases were neither detention hearings nor periodic review hearings, Rule 14(A) does not apply. *Compare* I.C. ch. 31-37-22 (2017) (disposition-modification hearings) *with* I.C. ch. 31-37-6 (detention hearings) *and* I.C. § 31-37-20-2 (periodic review hearings).

Section B of Rule 14 then acts as a broad, catch-all provision, governing remote participation in "other proceedings." Admin. R. 14(B). Specifically, Rule 14(B) applies to "any conference, hearing or proceeding not specifically enumerated in Section (A) of this rule, with the exception of criminal proceedings involving the right of confrontation or the right to be present." *Id.* In situations falling within this broad scope, remote participation tools can be used if either (1) all the parties consent in writing and that consent is entered on the Chronological Case Summary or (2) the trial court, on its own motion or that of a party, finds good cause for remote participation based on factors provided in the rule. Admin. R. 14(B)(1)–(2). As provided by the plain language of Rule 14(B), the only exceptions to its broad scope are situations listed in Rule 14(A) and certain

criminal proceedings.  Otherwise, Rule 14(B) governs the use of remote participation tools in all conferences, hearings, and proceedings.

Juvenile disposition-modification hearings fall within the broad scope of Rule 14(B) because neither of the exceptions to the rule's scope apply.  First, as noted above, the only juvenile delinquency proceedings listed in Rule 14(A) are detention hearings and periodic review hearings, and the disposition-modification hearings at issue here are different.  Second, juvenile proceedings are not criminal matters.  *E.g.*, *D.M. v. State*, 949 N.E.2d 327, 333 n.6 (Ind. 2011).  Thus, because juvenile disposition-modification hearings are not listed in Rule 14(A) and are not criminal matters, Rule 14(B) applies and should have been complied with here.

## B.  The State's arguments against Rule 14(B)'s applicability are misplaced.

The State argues that Rule 14(B) does not govern C.S., Jr.'s or Z.T.'s remote appearance in these cases because it addresses "the lack of the personal presence of a testifying witness, not of a party to the proceeding."  *C.S., Jr.* State's Response to Pet. to Transfer, p. 7; *Z.T.* State's Response to Pet. to Transfer, p. 7.  In support of this argument, the State contends that the factors provided in the rule for determining whether good cause exists and the notice requirements for a motion to use remote communication tools relate to the presence of a witness.  This focus, the State concludes, limits the scope of Rule 14(B) to non-party witnesses.  Although Rule 14(B) uses witness-focused language in some parts, its applicability is not limited to situations when a non-party witness seeks to testify remotely for three reasons.

First, the State's argument ignores the broad statement of Rule 14(B)'s scope and would necessarily require us to read language into the rule that is not there.  Rule 14(B) expressly applies to "any conference, hearing or proceeding not specifically enumerated in Section (A) of this rule, with the exception of criminal proceedings involving the right of confrontation or the right to be present."  Admin. R. 14(B).  The State's interpretation of the rule would add an additional limitation to that scope whereby the rule

would apply only to situations when a non-party witness seeks to testify remotely, but that limitation is not found in the plain language of the rule.

Second, the good-cause factors do not uniformly or exclusively refer to out-of-court non-party witnesses. Rule 14(B) provides the following factors that must be considered by the court in its good-cause determination:

> (a) Whether, after due diligence, the party has been unable to procure the physical presence of the witness;
> (b) Whether effective cross-examination of the witness is possible, considering the availability of documents and exhibits to counsel and the witness;
> (c) The complexity of the proceedings and the importance of the offered testimony in relation to the convenience to the party and the proposed witness;
> (d) The importance of presenting the testimony of the witness in open court, where the fact finder may observe the demeanor of the witness and impress upon the witness the duty to testify truthfully;
> (e) Whether undue surprise or unfair prejudice would result; and
> (f) Any other factors a trial court may determine to be relevant in an individual case.

Admin. R. 14(B)(2)(a)–(f). Reviewing this list, we see that only two of the six factors—(a) and (d)—necessarily refer to an out-of-court witness. Neither factor (e) nor factor (f) refers to witnesses at all. And both factor (b) and factor (c) can apply to situations involving an out-of-court party and an in-court witness. For example, in relation to factor (b), there may be real concerns about an out-of-court party's ability to effectively cross-examine an in-court witness by video conference.

Third, Rule 14(C), which provides the minimum technical requirements for remote participation, shows that out-of-court parties are contemplated by Rule 14. Rule 14(C) applies "to any hearing or proceeding conducted under this rule" and requires the court to assure that "[t]he facility and

equipment provide counsel with the ability to confer privately with an out of court party." Admin. R. 14(C)(1). If Rule 14(B) applies only when a witness might testify remotely, this part of Rule 14(C) expressly referring to out-of-court parties would be rendered meaningless for proceedings that fall under Rule 14(B). Thus, the scope of Rule 14(B) is not limited to situations involving non-party witnesses seeking to testify remotely, and the rule applies here.

## II. The trial court did not follow Rule 14(B) in holding the hearings with the Juveniles participating remotely.

Having concluded that Rule 14(B) applies here, we consider whether the trial court followed its requirements. The rule allows remote, electronic participation only when (1) all parties consent and that consent is reflected in the Chronological Case Summary or (2) the court finds good cause. Admin. R. 14(B)(1)–(2). The entries in the Chronological Case Summaries for these hearings do not indicate that the parties agreed to the Juveniles participating via Skype. *See C.S., Jr.* App. Vol 2, p. 6; *Z.T.* App. Vol. II, p. 7. And the State acknowledges that the trial court did not make findings of good cause. *C.S., Jr.* State's Response in Opposition to Transfer, p. 9; *Z.T.* State's Response in Opposition to Transfer, pp. 7–8. Without an agreement on the issue or a finding of good cause on the record, the trial court erred when it allowed C.S., Jr. and Z.T. to appear and participate in the hearings via Skype. Because the Juveniles did not object to their remote appearance, however, this conclusion does not resolve these appeals.

## III. The error in allowing C.S., Jr.'s and Z.T.'s remote participation was not fundamental.

Although the trial court did not follow Rule 14 here, neither C.S., Jr. nor Z.T. has shown that the trial court's noncompliance with the rule "made a fair trial [or, in this case, a fair hearing] impossible" or "present[ed] an

undeniable and substantial potential for harm." *Durden*, 99 N.E.3d at 652 (citation omitted).  As a result, the Juveniles have failed to satisfy the daunting standard of fundamental error and are not entitled to relief.

## A. The Juveniles' general arguments do not show fundamental error occurred.

In addressing the fairness of the hearings and the potential for harm in appearing remotely, C.S., Jr. and Z.T. make several high-level arguments generally applicable to all juveniles in similar situations.  They argue that remote participation tools make it harder for a juvenile to participate in the delinquency process, lessen the reformative impact of contact with the juvenile court, and "undermine trust in the justice system."  *C.S., Jr.* Pet. to Transfer, p. 11; *Z.T.* Pet. to Transfer, p. 12.  Referencing the *parens patriae* role of a juvenile court, C.S., Jr. and Z.T. try to drive home their point by saying, "Parents talk face-to-face with children when disciplining them. They communicate directly, rather than indirectly through equipment, when disciplining their children.  And a court should be expected to do the same unless the juvenile consents to not being personally present." *C.S., Jr.* Pet. to Transfer, p. 12; *Z.T.* Pet. to Transfer, p. 14.  While some nuances may be lost during the course of some video-conference hearings, we cannot agree that a properly conducted juvenile hearing with remote participants necessarily results in the harms the Juveniles predict.  In some cases, a juvenile may benefit more from sticking closely to a routine built for rehabilitation and appearing at a hearing remotely rather than by being taken out of his or her rehabilitative setting and routine to be transported to a hearing.  And as parents traveling away from their children for military deployments, work trips, or other reasons know, under the right circumstances, a person can still effectively parent and discipline a child from a distance.

In another general argument, the Juveniles contend that a substantial potential for harm exists because a juvenile could eventually become a criminal as an adult.  Combined Oral Argument at 8:21–10:08, 38:33–38:45. But the risk that the juvenile justice system fails to set a child on the right path, resulting in the child later entering the criminal justice system as an

adult, exists in every juvenile case. We cannot agree with the Juveniles' argument that this risk is necessarily increased by a trial court's decision to conduct a hearing by video. Ultimately, the risk of unfairness and potential harms discussed in these general arguments are too speculative and too far removed from the error here to lead us to find fundamental error.

## B. The Juveniles' arguments based on the specific facts of their cases do not show that fundamental error occurred.

In addition to their general arguments, C.S., Jr. and Z.T. also advance an argument regarding fundamental error based on the specific facts here. They contend that their remote participation in the hearings made a fair hearing impossible and presented a substantial potential for harm because portions of their statements were noted by the court reporter as indiscernible. "Indiscernible testimony," the Juveniles offer, "is likely the result of poor or inadequate equipment or equipment failures." *C.S., Jr.* Pet. to Transfer, p. 12; *Z.T.* Pet. to Transfer, p. 13. We cannot agree. While notations in the transcript of indiscernible statements **could** indicate technical problems with the equipment used by the trial court, two aspects of these cases show that it is unlikely that technical issues impacted the hearings.

First, in both hearings, statements from people who appear to have been in the courtroom were noted as indiscernible. C.S., Jr.'s mother participated in the modification hearing, and the court reporter noted some of her statements as indiscernible. *C.S., Jr.* Tr. Vol. II, pp. 42–43. But C.S., Jr.'s mother was in the courtroom. *C.S., Jr.* Appellant's App. Vol. 2, p. 71. In Z.T.'s case, portions of the probation officer's and defense counsel's statements were noted as indiscernible, *Z.T.* Tr. Vol. II, pp. 40, 59, but they appear to have been in the courtroom, *see Z.T.* Appellant's App. Vol. II, pp. 7, 78 (showing no indication of their remote participation in the Chronological Case Summary or in the trial court's order). Thus, the testimony noted as indiscernible in the transcripts was not tied exclusively to the remote participants.

Second, if the video feed at the hearing cut out or there was some other issue that rendered the Juveniles' statements unintelligible, we would expect to see another participant—the trial court judge, defense counsel, the prosecutor, the probation officer, or one of C.S., Jr.'s or Z.T.'s family members—speak up and ask for clarification. But that did not happen. In fact, the trial judge seemed to have no problem understanding at least one statement from C.S., Jr.'s mother marked as indiscernible. *See C.S., Jr.* Tr. Vol. II, p. 42 ("THE MOTHER: (Indiscernible to reporter) … what I have to say. THE COURT: Well, it always makes a differen[ce] what a parent has to say, but we don't know if it's going to be persuasive until you say it."). And during Z.T.'s hearing, the trial court specifically asked Z.T., "[C]an you hear what's going on?" to which Z.T. replied, "Yeah." *Z.T.* Tr. Vol. II, p. 40. Based on our review of the transcript, the clarity of someone's statement at the hearing did not depend on whether that person was in the courtroom or appeared by video, and the participants in the hearing likely understood the statements noted in the transcript as indiscernible. Thus, notations that some of C.S., Jr.'s and Z.T.'s statements at their hearings were indiscernible to the court reporter do not show that their remote participation in the hearings resulted in fundamental error. [3]

Neither the Juveniles' general arguments nor their specific arguments have shown that the trial court fundamentally erred in having them participate in their hearings remotely. By failing to object at trial and failing to demonstrate fundamental error on appeal, C.S., Jr. and Z.T. have waived the issue and are not entitled to relief. "Going forward, though, we would expect to see what our rules require reflected in the record, and would urge trial courts to be cautious of using procedures—however efficient they may be—without following all of the steps required to implement those procedures . . . ." *Hawkins*, 982 N.E.2d at 1003.

---

[3] Z.T. also mentions that there were questions as to whether he could see his mother during the hearing. *Z.T.* Pet. to Transfer, p. 13. However, Z.T. admits (and the record reflects) that the issue was resolved during the hearing after an adjustment was made. *Z.T.* Appellant's Br., p. 24; *Z.T.* Tr. Vol. II, pp. 32–33. Since the issue was resolved, this does not support a finding of fundamental error.

## IV. Guidance for the Future

Having resolved the question before us, we pause now to offer advice to courts and parties faced with similar situations in the future. First, we give guidance to trial courts deciding whether they can hold a proceeding with remote participants pursuant to Rule 14(B). Then, we share advice regarding trial counsel's best course of action when faced with a situation similar to what occurred below.

If a trial court holds a hearing with remote participants based on a finding of good cause pursuant to Rule 14(B), it must base its good-cause determination on the factors listed in the rule and issue a written order complying with the rule's deadlines. Admin. R. 14(B)(2)(a)–(f), (B)(3). While the trial court here did not follow this requirement, the records contain facts that likely would have been relevant to the good-cause determinations. *See* Admin. R. 14(B)(2)(f) (directing courts to consider "[a]ny other factors a trial court may determine to be relevant in an individual case"). In a prior hearing in Z.T.'s case, the trial court noted that it did not have transportation available every day of the week. *Z.T.* Tr. Vol. II, p. 3. And both Juveniles had exhibited highly disruptive behavior. *Id.* at pp. 37–38; *C.S., Jr.* Tr. Vol. II, pp. 34–37. Neither this opinion nor Rule 14 aims to provide a complete list of the factors relevant to a Rule 14(B)(2) good-cause determination, but these facts likely would have been relevant to a finding of good cause here.

Further, in making a Rule 14(B)(2) good-cause determination in a juvenile case, a trial court will necessarily need to consider the unique aspects of the juvenile justice system. This system "is founded on the notion of *parens patriae*, which allows the court the power to step into the shoes of the parents." *In re K.G.*, 808 N.E.2d 631, 635 (Ind. 2004). Consistent with this foundation, juvenile courts are generally concerned with acting in the child's best interests. *Id.* at 636 (quoting *Santosky v. Kramer*, 455 U.S. 745, 766 (1982)) ("[T]he U.S. Supreme Court has affirmed that the state maintains 'a *parens patriae* interest in preserving and promoting the welfare of the child.'"); *N.L. v. Ind. Dep't of Child Servs. (In re N.E.)*, 919 N.E.2d 102, 106 (Ind. 2010) ("The resolution of a juvenile proceeding focuses on the best interests of the child . . . ."). This concern

about the child's best interests can extend to the way the juvenile court addresses and interacts with the child. Thus, the child's best interests will generally constitute a relevant factor under Rule 14(B)(2)(f) in a juvenile court's good-cause determination.

Finally, when a party is confronted with potential noncompliance with an applicable rule, the party should object. Because neither C.S, Jr. nor Z.T. objected to participating remotely in their hearings, they faced the daunting burden of showing fundamental error, which they ultimately failed to do. A properly placed objection would have preserved the issue for appeal. However, the practical effect of an objection is likely more important to an attorney's client. A "trial court can often correct an error if it is called to the court's attention. This can result in enormous savings in time, effort and expense to the parties and the court, including avoiding an appeal and retrial." *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013) (quoting *State v. Daniels*, 680 N.E.2d 829, 835 (Ind. 1997)). While objections might not have changed the outcome of the hearings or the appeals, they would have allowed the trial court to address C.S., Jr.'s and Z.T.'s concerns right away.

# Conclusion

Administrative Rule 14 controls when telephones and audiovisual telecommunication tools can be used in both criminal and civil matters in our trial courts. Different sections of Rule 14 dictate when these remote participation tools may be used in different types of conferences, hearings, and proceedings, and here we conclude that Rule 14(B) governs the use of telephones and audiovisual telecommunication tools in juvenile disposition-modification hearings. However, because C.S., Jr. and Z.T. failed to object to the trial court's noncompliance with Rule 14(B) and failed to demonstrate fundamental error, they have waived the issue. Therefore, we affirm the trial court's orders.

Rush, C.J., and Massa and Slaughter, JJ., concur.
David, J., concurs in part, dissents in part with separate opinion.

ATTORNEY FOR APPELLANTS
Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Andrew Kobe
Laura R. Anderson
Lyubov Gore
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE INDIANA PUBLIC DEFENDER
COUNCIL, JUVENILE DEFENSE PROJECT
Joel C. Wieneke
Indiana Public Defender Council, Juvenile Defense Project
Indianapolis, Indiana

**David, J., concurring in part, dissenting in part.**

    I fully concur with Part I and Part II of the majority opinion. I also join Part IV of the opinion and wish to praise the guidance given to our trial judges by my colleague. I respectfully dissent from Part III of the majority opinion, however, and would find that the failure of the trial court to follow Administrative Rule 14(B) resulted in fundamental error. Accordingly, I would reverse and remand this case for further proceedings.