Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana



FILED
Sep 05 2012, 9:46 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM LASHUN CAPLES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1202-CR-69 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-0712-FA-38

**September 5, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

William LaShun Caples ("Caples") was tried *in absentia* and convicted in Lake Superior Court of three counts of Class A felony child molesting. Caples appeals and presents one issue, which we restate as whether the trial court abused its discretion in denying Caples's motion to set aside the jury verdict.

We affirm.

## Facts and Procedural History

In the fall of 2007, twenty-seven-year-old Caples lived in an apartment in East Chicago, Indiana. Twelve-year-old E.S. lived above Caples in another apartment with her parents and siblings. E.S. was a friend of Caples's stepdaughter. E.S.'s mother was concerned about the way Caples behaved toward her daughter, and instructed her husband to inform Caples that E.S. was only twelve years old.

On at least four occasions in October and November 2007, Caples went to E.S.'s apartment when her parents were not there and had sexual intercourse with her. He also kissed E.S. on her mouth and genitals and had E.S. place her mouth on his penis. After these incidents, E.S. wrote Caples sexually explicit letters that Caples kept in his wallet. During one of his visits to E.S.'s apartment, Caples inadvertently left his wallet in the couch. E.S.'s father later found this wallet and the sexually explicit letters E.S. had written to Caples. E.S.'s mother took her daughter to the hospital and discovered that E.S. was pregnant. E.S. had an abortion, and subsequent DNA testing of the fetal remains determined that there was a 99.99% probability that Caples was the father.

E.S.'s father notified the police of what had happened, and on December 3, 2007, the police interviewed Caples at the police station, where Caples waived his Miranda

2

rights. When the police informed Caples that his wallet had been found in E.S.'s apartment, Caples spontaneously stated, "[I] would never have done anything to that little girl." Tr. pp. 154-55. When asked about the wallet and E.S., Caples twice denied that he would do anything to "a little girl." Id. Caples insisted that he did not have sex with E.S. and agreed to provide a DNA sample. When the police informed Caples that E.S. was pregnant his "face and demeanor just dropped[.]" Id. at 159. And when informed that the DNA test would indicate whether Caples was the one who had impregnated E.S., Caples began to weep and admitted that he had sexual intercourse with E.S. once in her apartment.

On December 5, 2007, the State charged Caples with three counts of Class A felony child molesting. After numerous continuances and delays, the trial court held a status hearing on July 21, 2011. At this hearing, the parties confirmed a pre-trial conference date of September 8, 2011, and a trial date of October 11, 2011. On September 8, 2011, Caples requested that the pre-trial conference be reset for October 3, 2011. On October 8, while Caples's attorney appeared, Caples himself failed to appear for the pre-trial conference in person.

On October 11, 2011, all parties except for Caples appeared for the scheduled jury trial. Caples's counsel informed the trial court that the defense had been working on a plea agreement with the State and had anticipated signing the plea agreement at the October 3, 2011 pre-trial conference at which Caples had failed to appear. Caples's counsel also asked the trial court "to consider continuing the matter." Tr. pp. 6-7. The State objected to a continuance, noting that Caples was well aware of his trial date. The

3

trial court noted that Caples had failed to inform his counsel of his reason for not appearing at his own trial and further noted that if Caples had intended to sign a plea agreement, he could have done so at the earlier pre-trial conference. The court observed that it had set the case for trial six times and had warned Caples each time that, if he failed to appear for his jury trial, he would be tried *in absentia*. The trial court denied the motion to continue, and the case proceeded to trial. During the trial, Caples's counsel argued that Caples was mistaken regarding E.S.'s age. On October 13, 2011, the jury found Caples guilty as charged after a three-day trial.

On December 21, 2011, Caples filed a motion to set aside the jury's verdicts and vacate his convictions, claiming that he had been unable to attend the jury trial due to his medical issues and/or lack of transportation. The trial court held a hearing on Caples's motion on January 18, 2012, prior to the scheduled sentencing hearing. The trial court denied the motion to set aside the verdicts and convictions. The trial court then sentenced Caples to consecutive terms of thirty-five years on the first two counts, but vacated the conviction on the third count. Caples now appeals.

**Discussion and Decision**

Caples argues that the trial court's denial of his motion to set aside the verdicts and convictions deprived him of his right to be present at his own trial.[1] Generally, a

---

[1] In addition to claiming that the trial court erred in denying his post-trial motion to set aside his convictions, Caples also claims that the trial court erred in denying his trial counsel's oral motion to continue made immediately prior to the start of the trial. Such non-statutory motions to continue are within the discretion of the trial court. Tolliver v. State, 922 N.E.2d 1272, 1281 (Ind. Ct. App. 2010), trans. denied. Caples's motion to continue did not give any reason for Caples's absence from court, even though his trial counsel had spoken with Caples's twelve days before. Other than Caples unexplained

4

defendant in a criminal proceeding has a right to be present at all stages of his trial.  U.S. Const. amend. VI; Ind. Const. art. 1, § 13; Fennell v. State, 492 N.E.2d 297, 299 (Ind. 1986).  However, a defendant may waive this right and be tried *in absentia* if the trial court determines that the defendant knowingly and voluntarily waived that right.  Jackson v. State, 868 N.E.2d 494, 498 (Ind. 2007).  Upon a showing that the defendant knew the scheduled trial date but failed to appear, "[t]he trial court may presume a defendant voluntarily, knowingly and intelligently waived his right to be present and try the defendant in absentia[.]"  Brown v. State, 839 N.E.2d 225, 227 (Ind. Ct. App. 2005), trans. denied; see also Jackson, 868 N.E.2d at 498 (trial court may conclude that defendant's absence is knowing and voluntary and proceed with trial when there is evidence that defendant knew of his scheduled trial date but failed to appear for trial and fails to notify the trial court or provide it with an explanation of his absence); Maez v. State, 530 N.E.2d 1203, 1206 (Ind. Ct. App. 1988) ("[t]he continued absence of a defendant who knows of his obligation to be in court, when coupled with a failure to notify the court and provide it with an explanation, constitutes a knowing and voluntary waiver."), trans. denied.  The best evidence of the defendant's knowledge is his presence in court on the day the matter is set for trial.  Brown, 839 N.E.2d at 227 (citing Fennell, 492 N.E.2d at 299).

But a defendant who has been tried *in absentia* "must be afforded an opportunity to explain his absence and thereby rebut the initial presumption of waiver."  Id.  On

absence from court, counsel gave no reason supporting his motion to continue.  Under these facts and circumstances, the trial court did not abuse its discretion in denying Caples's oral motion to continue.

appeal, we consider the entire record, including the defendant's explanation of his absence, to determine whether the defendant voluntarily, knowingly, and intelligently waived his right to be present at trial. Id. at 228.

In the present case, the trial court repeatedly advised Caples of his trial dates. The last time this occurred was on April 27, 2011, at a pre-trial conference where the trial court informed Caples that his trial was set for October 11, 2011. The trial court also warned Caples that he could be tried *in absentia* if he failed to appear. And at the pre-trial conference held on September 8, 2011, the parties again confirmed the trial date of October 11, 2011. Caples's counsel even telephoned him on September 29, 2011—less than two weeks before his trial—to inform him that he needed to be in court for trial on October 11. Caples's counsel informed him that he needed to submit a plea agreement or go to trial; Caples responded, "Okay," and told his attorney he would call back, but never did. See Appellant's App. pp. 134-35; Tr. p. 371.

Still, Caples failed to appear at the final pre-trial conference and for his trial. And there is no indication that Caples made any attempt to inform the trial court that he was unable to personally attend his trial. Thus, the trial court could rightly presume that Caples waived his right to be present at his trial. Brown, 839 N.E.2d at 227.

The trial court also gave Caples an opportunity to explain his absence and rebut this presumption of waiver by holding a hearing on Caples's motion to set aside the verdicts and convictions. See id. Caples claimed that he was medically unable to drive himself to trial and his alternate form of transportation, a friend, was unavailable the day of trial. The trial court was well within its prerogative to reject both of these excuses.

6

Caples was hospitalized on September 19, 2011, due to a blood clot in his leg and was not released from the hospital until September 24, 2011. Caples claims that he was medically unable to drive himself to the hospital for fear that a blood clot would come lose. However, his discharge instructions from the hospital informed Caples to "[c]onsult with your physician before resuming the following activities: Driving a car, walking stairs, sexual activity, returning to work or school." Appellant's App. p. 135. This does not prohibit Caples from driving; it simply instructed him to consult his physician before he did so. Moreover, Caples was released from the hospital on September 24, 2011— over two weeks before his scheduled jury trial. Caples's counsel also spoke with Caples on the telephone on September 29, 2011, five days after his release from the hospital and again informed him of his trial date and of his need to be there. Caples did not inform his trial counsel during that call that he was medically unable to attend the trial or that he needed transportation to the trial.

Under these facts and circumstances, the trial court was well within its discretion to discredit Caples's post-trial excuses and conclude that he waived his right to be present at his trial by failing to appear at the trial despite having been repeatedly informed of his scheduled trial date and the need to appear. The trial court therefore properly denied Caples's motion to set aside his convictions.[2]

Affirmed.

---

[2] The State notes that the United States Supreme Court has held that a violation of the defendant's right to be present at trial is subject to a harmless error analysis. See Arizona v. Fulminante, 499 U.S. 279, 307 (1991); Rushen v. Spain, 464 U.S. 114, 117-118, and n. 2 (1983). Here, there was overwhelming evidence that Caples had sexual intercourse with E.S. Not only did E.S. testify to this, but DNA testing of her aborted fetus indicated that there was a 99.99% probability that Caples was the father.

VAIDIK, J., and BARNES, J., concur.