


# IN THE
# Court of Appeals of Indiana

James McGraw,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

August 26, 2024

Court of Appeals Case No.
23A-CR-2130

Appeal from the Marion Superior Court

The Honorable Cynthia L. Oetjen, Judge

Trial Court Cause No.
49D30-2104-F2-10306

---

**Opinion by Judge Riley**
Judges Kenworthy and Felix concur.

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, James L. McGraw (McGraw), appeals his conviction for dealing in methamphetamine, a Level 2 felony, Ind. Code § 35-48-4-1.1(a)(2); dealing in cocaine, a Level 2 felony, I.C. § 35-48-4-1(a)(2); operating a vehicle while intoxicated, a Class A misdemeanor, I.C. § 9-30-5-2(a), (b); and dealing in a substance represented to be a controlled substance, a Level 6 felony, I.C. § 35-48-4-4.6(a).

[2] We affirm.

# ISSUES

[3] McGraw presents this court with three issues on appeal, which we consolidate and restate as follows:

> (1) Whether McGraw knowingly, voluntarily, and intelligently waived his right to counsel; and

> (2) Whether McGraw knowingly and voluntarily waived his right to be present at trial and to be represented by counsel when he refused to attend his own trial.

# FACTS AND PROCEDURAL HISTORY

[4] In the early morning hours of April 2, 2021, Officers of the Indianapolis Metropolitan Police Department conducted a traffic stop of a vehicle driven by McGraw after McGraw failed to stop at a red light. When the officer

approached the vehicle, he noticed an open can of beer on the center console. The officers removed McGraw from the vehicle to conduct field sobriety tests, two of which McGraw failed. A subsequent search of the vehicle and McGraw's person revealed, among other items, 48.4827 grams of methamphetamine, 31 tablets marked to look like oxycodone, two digital scales with residue, a hotel key card with residue, and $582 in cash. A search at the jail located 10.5644 grams of cocaine on McGraw's person.

[5] After several amendments of the Charging Information, the State ultimately charged McGraw with Level 2 felony dealing in methamphetamine, Level 2 felony dealing in cocaine, Class A misdemeanor operating a vehicle while intoxicated, Level 6 felony dealing in a substance represented to be a controlled substance, and alleged that he was an habitual offender. McGraw was appointed counsel at his initial hearing on April 7, 2021. During a hearing on July 12, 2022, the trial court addressed McGraw's motion to withdraw his court appointed attorney because McGraw alleged that counsel was "not doing anything for" him. (Transcript Vol. II, p. 49). McGraw's trial counsel explained that McGraw insisted on advancing arguments against his counsel's advice, was resistant to accepting counsel's guidance on the direction of the case, and had filed two different complaints with the Disciplinary Commission, both of which had been dismissed. Because trial counsel assured the trial court that his representation of McGraw was not compromised, the trial court offered McGraw the choice between keeping appointed counsel, representing himself, or hiring his own private counsel. McGraw refused to make a choice and the

trial court ordered appointed counsel to remain. "[N]ot satisfied with what [wa]s taking place [in the court]," McGraw refused to attend the suppression hearing that followed. (Tr. Vol. II, p. 57).

[6] At a hearing on August 18, 2022, McGraw again moved to withdraw counsel. After evaluating the posture of the case and McGraw's concern that his attorney did not want to pursue his allegation that a tracking device had been planted on his vehicle, the trial court again presented McGraw with three choices: represent himself, continue with appointed counsel, or hire his own attorney. Electing to represent himself, McGraw then refused to engage with the trial court in the *pro se* admonishments and the trial court ordered appointed counsel to remain on the case. Later that same month, McGraw filed a third motion to withdraw counsel. At the hearing on September 6, 2022, when asked if he wanted to proceed *pro se*, McGraw responded that "if that's the only way that this is going to take place without dealing with the lawyer that I have that's not representing me accordingly, I guess I will have to." (Tr. Vol. II, p. 112). After advising McGraw, verbally and in writing, about the perils of representing himself, the trial court proceeded to the admonishments of self-representation, which McGraw indicated he understood. The trial court also advised McGraw that no stand-by counsel would be appointed because he had indicated that he did not want his appointed counsel "anywhere around" him. (Tr. Vol. II, p. 121). Testimony was taken that reflected that McGraw had been convicted ten times, four of which were felony convictions, and that he had experienced two or three jury trials. At the conclusion of the hearing, the trial court granted

McGraw's motion to represent himself. McGraw proceeded *pro se* during the fourteen pre-trial hearings that followed.

[7] On July 31, 2023, the trial court conducted a jury trial. Prior to the commencement of *voir dire*, the trial court warned McGraw that "if you do act more out of turn, you can be removed from the courtroom, if you refuse to follow the rules." (Tr. Vol. IV, p. 11). The court clarified that "[i]n other words, you can't talk over me and you can't do those sorts of things. If you don't do those things correctly, then you can be removed from the courtroom, and your case will proceed without you present." (Tr. Vol. IV, p. 11). Following this caution, McGraw responded, "Well, Judge, I don't know, if it's going to be like this, then maybe I better take an attorney. I want you to appoint me an attorney then." (Tr. Vol. IV, p. 12). The trial court denied McGraw's motion and McGraw accused the court of "railroad[ing]" him. (Tr. Vo. IV, p. 12). The trial court provided McGraw with case law supporting a trial court's right to remove the defendant from the courtroom and proceed without him present. After reviewing the jurisprudence, McGraw reiterated his request for an attorney, which was denied by the trial court, and the trial court proceeded with *voir dire*. When informing the prospective jurors of the charges brought against McGraw, McGraw interrupted the trial judge and insisted that "[d]on't you think they ought to tell the real truth in this courtroom?" (Tr. Vol. IV, p. 25). Despite the trial court's admonishments to remain quiet, McGraw continued to interrupt the trial judge and asked the prospective jurors how they felt "about tracking devices [] being planted in our drugs, in our vehicles." (Tr.

Vol. IV, p. 26). The trial court ordered McGraw removed from the courtroom and continued the trial proceedings *in absentia*. Addressing the prospective jurors, the trial court informed them that

> McGraw has chosen to represent himself. He was given an attorney, and then had an attorney for a while, and then he chose to let that attorney go, and he had chosen to represent himself. He was given warnings, and he was told about the decorum in the courtroom, and he was also told that he had to behave as a lawyer. He would be removed from the courtroom. We had a lengthy conversation this morning about that. Obviously, he has chosen to not behave in some manner. So what I'm going to do, is I'm going to proceed for a little while. And then, I will bring him back in and see if he will -- I will inquire as to whether or not he can listen and do the right thing.

(Tr. Vol. IV, pp. 26-27). Throughout the trial, McGraw was given five opportunities to return to the courtroom and participate: prior to the second phase of *voir dire*, at the conclusion of *voir dire*, after the State's opening statement, prior to the testimony of the officer who conducted the search of McGraw's vehicle, and after the State rested its case. Each time McGraw was apprised of the status of the proceeding and each time McGraw refused to return to the courtroom. At the close of the evidence, the jury found McGraw guilty as charged.

[8] McGraw returned to the courtroom to have his fingerprints taken during the habitual offender phase of the proceeding. McGraw argued that he had not had a trial, had not had the opportunity to face his accusers, and did not have an attorney to represent him. After being ordered to submit to have his

fingerprints taken for the habitual offender phase of his trial, McGraw contended that "I'm not going to take nothing. We'll tear this mother fucker up in here." (Tr. Vol. IV, p. 183). The trial court ordered McGraw removed from the proceeding. After the presentation of the evidence, the jury adjudicated McGraw to be a habitual offender.

[9] On August 17, 2023, the trial court conducted a sentencing hearing at which McGraw was present. The trial court sentenced McGraw to concurrent sentences of twenty years for each dealing conviction, one year for the Class A misdemeanor conviction, and one year for the Level 6 felony conviction. The trial court enhanced the twenty-year sentence on the Level 2 felony dealing in cocaine conviction by fifteen years for the habitual offender determination, for an aggregate sentence of thirty-five years.

[10] McGraw now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

I. *Right to Counsel*

[11] McGraw contends that he was deprived of being represented by counsel, in accordance with his Sixth Amendment right under the United States Constitution and Article 1, Section 13 of the Indiana Constitution, because he did not knowingly, voluntarily, and intelligently waive his right to representation. When a defendant asserts his or her right to proceed *pro se*, the trial court must "acquaint the defendant with the advantages to attorney

representation and the disadvantages and the dangers of self-representation." *Jackson v. State*, 992 N.E.2d 926, 932 (Ind. Ct. App. 2013).

[12]     In *Wright v. State*, 168 N.E.3d 244, 263 (Ind. 2021), the supreme court concluded that the right to self-representation is not absolute and that the waiver of counsel must be: (1) knowing; (2) intelligent; (3) unequivocal; and (4) voluntary. When deciding whether a defendant meets these standards, a trial court should inquire, on the record, whether the defendant clearly understands (1) the nature of the charges against him, including any possible defenses; (2) the dangers and disadvantages of proceeding *pro se* and the fact that he is held to the same standards as a professional attorney; and (3) that a trained attorney possesses the necessary skills for preparing for and presenting a defense. *Id*. at 263-64 (citing *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003)). "In considering these factors, a court should 'indulge in every reasonable presumption against waiver of the right to counsel.'" *Id*. at 264 (quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232 (1977)). The trial court is uniquely situated to assess whether a defendant has waived the right to counsel. *Poynter v. State*, 749 N.E.2d 1122, 1128 (Ind. 2001). And when that court "has made the proper inquiries and conveyed the proper information," and then "reaches a reasoned conclusion about the defendant's understanding of his rights and voluntariness," an appellate court, after a careful review of the record, "will most likely uphold" the trial court's "decision to honor or deny the defendant's request to represent himself." *Id*.

[13] McGraw contends that the trial court violated his right to counsel on two separate occasions: once during the hearing on September 6, 2022, and a second time on the morning of trial. We will evaluate each instance separately.

A. *September 6, 2022 Hearing*

[14] McGraw moved to withdraw counsel and to represent himself three times during these proceedings. During the first hearing, McGraw refused to decide between his appointed counsel, hiring counsel, or representing himself. During the second hearing, McGraw decided to represent himself but then refused to engage with the trial court for the *pro se* admonishments. At the third hearing, on September 6, 2022, when asked to confirm that he wanted to proceed *pro se*, McGraw responded, "if that's the only way that this is going to take place without dealing with the lawyer that I have, that's not representing me accordingly, I guess I will have to." (Tr. Vol. II, p. 112). McGraw now claims that this response reflects that he was "vacillating" and therefore his request was equivocal. (Appellant's Br. pp. 16-17). We disagree.

[15] McGraw's request to proceed *pro se* was clear and unequivocal. At the third hearing and after the trial court reviewed with McGraw all the work appointed counsel had already performed on the case and appointed counsel confirmed that he was ready for trial, McGraw stated, "I'll represent myself, Judge." (Tr. Vol. II, p. 115). The trial court then engaged in an extensive and thorough colloquy with McGraw in which it advised McGraw of the benefits of being represented by counsel and the pitfalls of proceeding *pro se*. The trial court

expressly cautioned him that, in the past, the court "had two people who have represented themselves in trials in front of me, and it has not gone well for either one of them." (Tr. Vol. II, p. 116). After advising McGraw, verbally and in writing, about the perils of representing himself, the trial court proceeded to give him the admonishments of self-representation, which McGraw indicated he understood. The trial court elicited testimony about McGraw's educational and legal background, noting that McGraw was sixty-five years old, had a criminal history of ten convictions, of which four were felony convictions, and he had experienced "two or three" jury trials. (Tr. Vol. II, p. 122). As reflected by his criminal history, McGraw was no stranger to the criminal justice system and obviously knew he had the right to counsel. The trial court told him that an attorney could help him, including by investigating the case, questioning witnesses, filing motions and jury instructions, and arguing the law. The trial court advised him that he would be held to the same standards as trained counsel and warned him that if he was "disruptive or anything during the trial or mess up, then the trial ends." (Tr. Vol. II, p. 121). The trial court cautioned McGraw that no standby counsel would be appointed because he had "told [the court] that [he didn't] want [counsel] anywhere around" him. (Tr. Vol. II, p. 121). The trial court explained the charges McGraw was facing and warned him of "the possibility that there could be lesser included offenses, and the possibility that there may be defenses or mitigating circumstances that [he] might not be aware of." (Tr. Vol. II, p. 121). Even after hearing all these warnings, McGraw elected to represent himself and signed the written waiver

form. McGraw proceeded *pro se* during the fourteen pre-trial hearings that followed.

[16] McGraw's reliance on his statement, "anything to get rid of the lawyer I got," at the end of the advisement to show equivocation is unpersuasive. (Tr. Vol. II, p. 115). Contrary to McGraw's contention that the statement supports the argument of equivocation between self-representation and the right to be represented by counsel, the statement rather indicated that McGraw was not satisfied with the performance of his counsel. *See Dowell v. State*, 557 N.E.2d 1063, 1065 (Ind. Ct. App. 1990) (finding a clear and unequivocal request to proceed *pro se* where the defendant indicated he did not want the services of his appointed counsel and twice affirmed that he wanted to represent himself), *trans. denied*. The trial court made it clear that appointed counsel had competently represented McGraw, yet McGraw elected "to get rid of the lawyer [he] got." (Tr. Vol. II, p. 115). *See Luck v. State*, 466 N.E.2d 450, 451 (Ind. 1984) (If a defendant refuses to be represented by his court appointed counsel, he must "find some method to employ his own counsel or proceed *in propria persona*. The defendant may not arbitrarily compel a trial court to discharge competent appointed counsel.").

[17] Accordingly, by requesting to represent himself, McGraw knew "what he [was] doing and [made] his choice with eyes open." *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). He was admonished as to the dangers and disadvantages of self-representation, the nature of the charges, and the standards to which he would be held. *See Wright*, 168 N.E.3d at 263-64.

Therefore, we find that the trial court properly inquired into McGraw's request to proceed *pro se* and he cannot now contend that the waiver of his right to counsel was not knowing, voluntary, or intelligent.

B. *Morning of Trial*

[18] In a related argument, McGraw contends that the trial court denied his Sixth Amendment right to counsel on the morning of the trial. On July 31, 2023, prior to the commencement of the *voir dire* phase of the jury trial, the trial court warned McGraw that "if you do act more out of turn, you can be removed from the courtroom, if you refuse to follow the rules." (Tr. Vol. IV, p. 11). Following this caution, McGraw responded, "Well, Judge, I don't know, if it's going to be like this, then maybe I better take an attorney. I want you to appoint me an attorney then." (Tr. Vol. IV, p. 12). The trial court denied McGraw's motion.

[19] In *Koehler*, our supreme court held that where a defendant seeks to abandon a *pro se* defense and reassert the right to counsel, "[r]elevant factors must be considered by the trial court in order for it to exercise a meaningful discretion in ruling on defendant's request to change from self-representation to counsel-representation." *Koehler v. State*, 499 N.E.2d 196, 199 (Ind. 1986).

> Relevant factors should include, among others, the following: (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation; (2) the reasons set forth for the request; (3) the length and stage of the trial proceedings; (4) disruption or delay which reasonably might be expected to ensue from the granting

of such motion; and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.

*Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008) (citing *Koehler*, 499 N.E.2d at 199).

[20] An analysis of the *Koehler* factors reveals that the trial court properly denied McGraw's request for appointment of counsel. Turning to the first factor, we note that the trial court did not lightly proceed with granting McGraw's request for self-representation. Only after the third motion and after a detailed and lengthy colloquy informing McGraw of the perils and pitfalls of proceeding *pro se*, did the trial court grant McGraw's request. Accordingly, this first factor weighs against McGraw. *See Mynatt v. State*, 42 N.E.3d 567, 570 (Ind. Ct. App. 2015) (finding that the first factor weighed against appointing counsel where Mynatt made the decision to proceed *pro se* at the beginning of the case and did not change his mind until mid-way through trial). The second factor—reasons for the request—also weighs against McGraw. McGraw did not request counsel because he decided that he was incapable of representing himself but because he was advised that if he was disruptive or misbehaved, he would be removed from the courtroom and the trial would proceed without him. The third and fourth factors—stage of trial and delay which would ensue—also weigh against reappointment of counsel. By the time trial started, McGraw's charges had been pending for over two years. The jury was seated and was awaiting selection. Standby counsel was not present to assume representation

because McGraw had expressed an unwillingness to have one. Granting McGraw's request would have resulted in a substantive delay. *Maisonet v. State*, 579 N.E.2d 660, 662 (Ind. Ct App. 1991) (finding that the appointment of counsel would have interrupted the proceedings and caused an excessive delay). The final factor—McGraw's effectiveness in defending against the charges— also weighs in favor of denying the request for counsel. The evidence was not complex, and McGraw had developed a theory of defense—that the officers had placed a tracking device on his truck without a warrant, which would have invalidated the search of the vehicle that led to the discovery of the narcotics. McGraw was articulate and had experience in criminal proceedings. During the ten months in which he had represented himself, McGraw had issued subpoenas to witnesses and had deposed the arresting officer. He had made objections to the motion to quash his subpoena and to the State's motion for continuance. He moved to dismiss the charges several times, he rejected the State's plea offer, and moved for a speedy trial. As McGraw's pre-trial representation was proactive, he could have effectively represented himself during trial.

[21] Accordingly, based on our weighing of the *Koehler* factors, we find that the trial court did not abuse its discretion in denying McGraw's request for counsel on the morning of trial. We conclude that McGraw was not denied his Sixth Amendment right to counsel.

II. *Right to be Present at Trial*

[22] Next, McGraw contends that the trial court violated his Sixth Amendment right under the United States Constitution and Article 1, Section 13 of the Indiana Constitution[1] when it removed McGraw from the courtroom and conducted the proceeding *in absentia* without providing him with any defense presence. One of the most basic rights guaranteed by the Sixth Amendment is the accused's right to be present in the courtroom at every stage of his trial. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058 (1970). "A defendant may, however, lose the right to be present at trial by consent or misconduct." *Partee v. State*, 184 N.E.3d 1225, 1234 (Ind. Ct. App. 2022), *trans. denied*; *Wells v. State,* 176 N.E.3d 977, 982 (Ind. Ct. App. 2021) ("A criminal defendant may however lose the right to be present at trial by engaging in misconduct.").

[23] Conceding that he was "irrational" and was removed from the courtroom because of his conduct, McGraw challenges the fact that the trial court conducted "the entire trial without the defendant present or any counsel to stand in for his defense." (Appellant's Br. p. 7). A criminal defendant may be tried *in absentia* if the trial court determines that the defendant knowingly and voluntarily waived that right. *Jackson v. State*, 868 N.E.2d 494, 498 (Ind. 2007). "When a defendant fails to appear for trial and fails to notify the trial court or

---

[1] Article 1, Section 13 of the Indiana Constitution affords a defendant in a criminal proceeding the right to be present at all stages of his trial. *Jackson v. State*, 868 N.E.2d 494, 498 (Ind. 2007). A defendant may, however, be tried in absentia where the trial court determines that the defendant knowingly and voluntarily waived that right. *Id*. In *Campbell v. State*, 732 N.E.2d 197, 204-05 (Ind. Ct. App. 2000), this court noted that, although the United States Supreme Court in *Allen* addressed only the Sixth Amendment right to be present at trial, "we can perceive of no reason why an identical waiver rule should not also be applicable to Article [1], [S]ection 13 of the Indiana Constitution."

provide it with an explanation of his absence, the trial court may conclude the defendant's absence is knowing and voluntary and proceed with trial when there is evidence that the defendant knew of his scheduled trial date. *Id.* "The best evidence that a defendant knowingly and voluntarily waived his or her right to be present at trial is the 'defendant's presence in court on the day the matter is set for trial.'" *Lampkins v. State,* 682 N.E.2d 1268, 1273 (Ind. 1997) (quoting *Fennell v. State*, 492 N.E.2d 297, 299 (Ind. 1986)), *modified on reh'g*, 685 N.E.2d 698.

[24] Here, McGraw was present in the courtroom on the morning of trial. As before, the trial court cautioned McGraw that if he disrupted the proceedings or misbehaved, he would be removed, and the trial would proceed in his absence. McGraw proceeded to become disruptive at the commencement of *voir dire* and was ordered removed from the courtroom. Throughout the trial, McGraw was given five opportunities to return to the courtroom and participate. Each time McGraw was apprised of the status of the proceeding and each time McGraw refused to return to the courtroom. We conclude that the record fully supports the finding that McGraw willfully and knowingly refused to appear at trial and waived his right to be present.

[25] After McGraw willfully and knowingly refused to appear at trial, the trial court was not constitutionally mandated to appoint counsel for him. Although we recognize the importance of a defense presence at trial, however, in keeping with *Faretta*, we also recognize that a defendant has the right to self-representation, which is based on respect for the defendant's autonomy, and

that, when exercising that right, a defendant can choose not to participate in, or even attend, trial. *See Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525. Our Indiana Supreme Court has recognized that while a defendant's absence from trial does not, in every case, constitute a waiver of the right to counsel, it can be a waiver where the defendant's absence from trial was a "willful, knowing and voluntary act." *Jackson*, 868 N.E.2d at 499; *Hawkins v. State*, 982 N.E.2d 997, 1000-01 (Ind. 2013) (reiterating *Jackson* that "willful, knowing, and voluntary misconduct aimed at manipulating the court system for one's own benefit will not be looked upon with anything resembling favor"). Mindful of the circumstances of this case, we conclude that that is what McGraw did. The trial court found that McGraw was trying to get himself removed from the courtroom and repeatedly warned defendant that, if he insisted on disrupting the proceedings, no one would be present to represent him. Despite those warnings, he continued to violate the order. By doing so, McGraw made a knowing and voluntary choice to be removed from the courtroom and leave the defense table empty. McGraw's conduct resulted in an "intentional and inexcusable absence from trial and serve[d] as a knowing, intelligent, and voluntary waiver of counsel." *Jackson*, 868 N.E.2d at 499.

[26]  When a defendant waives the right to counsel knowing that, if he is removed from the courtroom for misconduct, no one will be present to represent him, and then, while representing himself, intentionally engages in misconduct that he knows will result in his removal, the defendant is choosing to not participate in or be present at trial. In that circumstance, a trial court can accept the

defendant's choice and is not required to appoint counsel or take other measures to provide a defense presence. *See State v. Lacey*, 431 P.3d 400, 408 (Or. 2018); *State v. Eddy*, 68 A.3d 1089, 1104 (R.I. 2013) (finding that *pro se* defendant's voluntary choice not to attend his trial did not require the trial court appoint counsel to represent him). McGraw's reliance on *United States v. Mack*, 362 F.3d 597, 600-03 (9th Cir. 2004) as support for his position that he should have been appointed counsel after having been removed from the courtroom is misplaced as *Mack* is factually distinguishable. In *Mack*, Mack was removed from the courtroom and although he was allowed—and did—return to the courtroom, the court did not allow him to act in his own defense and decided to eliminate important elements of the trial court proceedings—even disallowing summation by both sides. *See id*. McGraw, on the other hand, refused to return to the courtroom each of the five times the court invited him back, and McGraw himself previously refused standby counsel. He created both layers of the problem—his own absence and that of standby counsel. Although McGraw's absence resulted in an empty defense table and, consequently, was inconsistent with the active partisan advocacy that is intended to ensure the fairness of trials, McGraw's voluntary and informed decision to absent himself was "an exercise of his self-representation," which the trial court was allowed to accept. *Eddy*, 68 A.3d at 1108; 1106 (reasoning that, to the extent the defendant "faced trial without advantages guaranteed by the Sixth Amendment, that was not by the trial judge's imposition, but by [his] own informed choice, which the trial court was bound to respect" (internal quotation marks omitted)).

"A defendant cannot be permitted to manipulate the system simply by refusing to show up for trial." *Jackson*, 868 N.E.2d at 499. We conclude that the record fully supports the trial court's finding that McGraw willfully and knowingly refused to appear at trial, waived his right to be present at trial, and waived his right to counsel.

## CONCLUSION

Based on the foregoing, we hold that McGraw knowingly, voluntarily, and intelligently waived his right to counsel; and he knowingly and voluntarily waived his right to be present at trial and to be represented by counsel when he refused to attend his own trial.

Affirmed.

Kenworthy, J. and Felix, J. concur

APPELLANT PRO SE

James McGraw
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana